IN RE: INQUIRY CONCERNING A JUDGE, NOS. 05-226, 06-005, 06-073, 06-086, 06-087, AND 06-105—MARK H. BADGETT, RESPONDENT

No. 173A07

(Filed 7 March 2008)

### Judges— censure—suspension—willful misconduct—gross misconduct

A district court judge was censured and suspended from office as a judge for sixty days from entry of this order for conduct in violation of Canons 1, 2A, 2B, 3A(2), 3A(3), 3A(4), and 3D of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute, willful misconduct, and willful and persistent failure to perform his duties in violation of N.C.G.S. § 7A-376 based upon his participation in the preparation of a remittal of disqualification in cases involving an attorney with whom he had a business relationship, despite provisions of the Code of Judicial Conduct to the contrary; his untruthful statements under oath regarding his attempts to procure the remittal of disqualification; and his pressure on the district attorney to sign the remittal of disqualification by using threats and the power of his office.

This matter is before the Court pursuant to N.C.G.S. § 7A-376 upon a recommendation by the Judicial Standards Commission entered 19 March 2007 that respondent Mark H. Badgett, a Judge of the General Court of Justice, District Court Division, State of North Carolina Judicial District Seventeen-B, be censured for conduct in violation of Canons 1, 2A, 2B, 3A(2), 3A(3), 3A(4), and 3D of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice, willful misconduct, and willful and persistent failure to perform his duties in violation of N.C.G.S. § 7A-376. Calendered for argument in the Supreme Court on 17 October 2007, but determined on the record without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate

**IN RE BADGETT**

[362 N.C. 202 (2008)]

Procedure and Rule 2(c) of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission.

*Robert C. Montgomery, Special Counsel, for the Judicial Standards Commission.*

*Randolph and Fischer, by J. Clark Fischer; and Melvin and Powell, by Edward L. Powell, for respondent.*

ORDER OF SUSPENSION AND CENSURE

On 19 March 2007, the Judicial Standards Commission (Commission) recommended that this Court censure respondent, a Judge of the General Court of Justice, District Court Division, Judicial District Seventeen-B, for conduct inappropriate to his judicial office.

On 2 October 2006, the Commission filed a complaint alleging, *inter alia*, that respondent: (1) had a business relationship with attorney Ernest Clark Dummit; (2) neither disclosed this relationship to parties or counsel appearing before him nor disqualified himself from matters involving Dummit; (3) subsequently attempted to coerce District Attorney C. Ricky Bowman into signing a remittal of disqualification; (4) engaged in retaliatory conduct against the district attorney's office after the district attorney refused to sign the remittal; (5) made comments and ruled in a manner that created the impression that attorney Dummit was in a position to influence respondent, thereby calling into question his impartiality; (6) coerced a guilty plea from criminal defendant Dale William Walker; (7) attempted to coerce a guilty plea from criminal defendant Eric Wayne Potts; and (8) was habitually rude and condescending to those who appeared before him and demonstrated an arrogant and contemptuous demeanor while presiding over court.

Respondent filed his answer on 20 October 2006. The Commission conducted hearings on the matter on 30 November 2006, 1 December 2006, 18 and 19 January 2007, and 9 February 2007. It subsequently entered findings of fact as follows:

2. Prior to respondent's election as a district court judge, he was a practicing attorney in King, North Carolina and maintained his office in a building owned by him and located at 210 E. Dalton Street, King, North Carolina. After his election in November 2004, respondent entered into discussions with E. Clarke Dummit, an attorney with his primary office in Winston-Salem, North Carolina, concerning an arrangement by which Mr. Dummit

**IN RE BADGETT**

[362 N.C. 202 (2008)]

would lease respondent's building and purchase his files. On or about 1 December 2004, respondent entered into a lease of the premises to American Law Offices, PC doing business as "The Dummit Law Firm,' which lease was executed by respondent and Mr. Dummit as President of American Law Offices, PC. Thereafter, Mr. Dummit sent out letters soliciting respondent's former clients, and others, and representing that his offices would be located in respondent's former offices and that he would, as a courtesy to respondent, maintain respondent's legal files.

3. After respondent executed the lease to Mr. Dummit's law firm, Mr. Dummit appeared on behalf of clients on multiple occasions before respondent. At no time did respondent disclose to opposing counsel, including members of the staff of the district attorney for the 17-B Prosecutorial District, the business relationship existing between respondent and Mr. Dummit.

4. After members of the district attorney's staff complained concerning what they perceived to be favorable treatment accorded Mr. Dummit by respondent, respondent was advised by letter dated 10 January 2006 from Paul R. Ross, Executive Secretary of the Judicial Standards Commission, that his business relationship with Mr. Dummit was potentially grounds for disqualification in matters in which Mr. Dummit was involved. Respondent, as well as members of the district attorney's office, also received information from Mr. Ross with respect to the provisions of Canon 3D of the Code of Judicial Conduct regarding remittal of disqualification.

5. At respondent's direction, Mr. Dummit prepared a document entitled "In re Remittal of Disqualification" disclosing the landlord-tenant relationship existing between respondent and Mr. Dummit and deeming it "insubstantial and immaterial pursuant to the opinion rendered by the Judicial Standards Commission." No such opinion was ever rendered by the Commission or Mr. Ross. Mr. Dummit signed the document and sent it to respondent, who signed it, and to District Attorney C. Ricky Bowman, who declined to sign it. Notwithstanding the provisions of Canon 3D of the Code of Judicial Conduct requiring that a remittal of disqualification be reached independently of the judge's participation, respondent contacted Mr. Bowman on more than one occasion in efforts to obtain his signature on the document, including one occasion in open court in which he requested Mr. Bowman to come to the bench and told him that Mr. Ross had said Mr.

**IN RE BADGETT**

[362 N.C. 202 (2008)]

Bowman needed to sign the document and that the Judicial Standards investigation was over. Neither of those statements was true. Upon Mr. Bowman's refusal to sign the document, respondent became angry and threatened to "give everyone the maximum sentence" and "clog up superior court." *The Commission specifically finds that the respondent's testimony concerning his conversation at the bench with Mr. Bowman was not credible.* (emphasis added)

6. After receiving notice dated 27 December 2005 of the Commission's preliminary investigation . . . respondent inquired of Mr. Ross as to the identity of the complainants. Citing Commission Rules 4, 7, and 9, Mr. Ross advised respondent that the "identity of the complainant is confidential until the Commission concludes whether formal proceedings should be filed." Notwithstanding, respondent told Assistant District Attorney Angela Puckett that he knew who had complained, they were a "burr in his side" and that he was going to "unload on them." He created a hostile work environment to members of the district attorneys [sic] staff and told one of them, Mr. Langan, "you don't represent the State, the officer does" or words to that effect, and urged Mr. Bowman to fire Mr. Langan.

7. After respondent was served with the NOTICE OF COMPLAINT AND COMPLAINT in this matter, respondent threatened to sue Assistant District Attorney Tim Watson and "everyone in the district attorney's office." In response to a motion that respondent be recused from hearing matters in which the district attorney's office was involved, respondent agreed to recuse himself from hearing criminal matters, but ordered that the motion be sealed.

8. Respondent has been habitually rude and condescending to those who appear before him in court. On 14 March 2006, while hearing evidence in the case of *State v. Potts*, . . . respondent expressed displeasure at having to begin a contested trial late in the day, turned his back to the witness who was testifying, engaged in conversation with a courtroom clerk during the witness's testimony, and stated to defense counsel Karen Adams that he had "quit taking notes—I'm drawing arrows to who is related to who and what boyfriends and girlfriends go together." On 22 March 2006, respondent belittled courtroom clerk Hope Brim in open court by speaking to her in a sarcastic manner and suggesting that she had been late coming to court when, in fact, she

arrived before the usual time for the opening of court. In his testimony before the Commission, respondent acknowledged that he has, on occasion, been loud and arrogant while in court and that he needs to work on his judicial temperament.

9. On 28 March 2006, Patsy Royal was present in the courtroom where respondent was presiding. Virginia Smith was also present in the courtroom and observed Ms. Royal carve or scratch an obscenity into the wooden bench upon which she was seated. Ms. Smith reported the action to a deputy sheriff. As a result, Ms. Royal was taken into custody and taken before a magistrate and charged with injury to property, a Class 1 misdemeanor. She was then taken before respondent for the purpose of a first appearance and the setting of bond. Respondent asked the deputy if Ms. Royal was the one who had carved on a bench, which was indicative of his having received *ex parte* information concerning the underlying facts of the matter in addition to that contained in the warrant, since a description of the offense was not contained in the warrant. He became very angry and loud, telling Ms. Royal that her actions were akin to "burning a church" and that she was "going to pay" for her conduct and that "she would begin paying now", notwithstanding the fact that Ms. Royal had not been convicted of any crime at that time. When Ms. Royal attempted to speak, respondent would not allow her to do so and told her that she was going to listen. Respondent asked Assistant District Attorney Langan for a bond recommendation, telling him that whatever recommendation he made would not be enough. After Mr. Langen [sic] recommended a $5,000 bond, respondent set bond at $10,000 without making any inquiry into the circumstances required by N.C.G.S. [§] 15A-534(c).

From these findings, the Commission concluded as a matter of law that respondent should be censured and recommended that sanction to this Court on 19 March 2007.[1] This Court "may adopt the Commission's findings of fact if they are supported by clear and convincing evidence, or it may make its own findings." *In re Hayes*, 353 N.C. 511, 514, 546 S.E.2d 376, 378 (2001) (citing *In re Hardy*, 294 N.C. 90, 98, 240 S.E.2d 367, 373 (1978)) *cause dismissed*, 356 N.C. 389, 584 S.E.2d 260 (2002). Moreover, the Commission's recommendations are not binding on this Court. *In re Nowell*, 293 N.C. 235, 244, 237 S.E.2d 246, 252 (1977).

---

1. Five members voted to censure respondent; one favored removing him from office.

## IN RE BADGETT

[362 N.C. 202 (2008)]

In reviewing the Commission's recommendations, "this Court acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court." *In re Daisy*, 359 N.C. 622, 623, 614 S.E.2d 529, 530 (2005) (citing *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978) *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979)). Consequently, this Court exercises its independent judgment with respect to the disciplinary measures to be imposed on a judge. *In re Stephenson*, 354 N.C. 201, 205, 552 S.E.2d 137, 139 (2001) (citing *Nowell*, 293 N.C. at 244, 237 S.E.2d at 252). We have previously noted that rigid structure and rules in this area are not appropriate, since each case presents its own wrinkles and nuances and should therefore be decided on its own facts. *See In re Martin*, 302 N.C. 299, 316, 275 S.E.2d 412, 421 (1981).

Therefore, in reviewing the Commission's recommendations, this Court must first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law. Finally, we determine if the sanctions proposed by the Commission are appropriate in light of the circumstances of the case.

After carefully reviewing the record and transcript, we conclude that the Commission's findings are supported by clear and convincing evidence. We also agree with the Commission's conclusions that respondent's actions violated Canons 1, 2A, 2B, 3A(2), 3A(3), 3A(4), and 3D of the North Carolina Code of Judicial Conduct and constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute, willful misconduct, and willful and persistent failure to perform his duties in violation of N.C.G.S. § 7A-376. We must now decide whether to accept the Commission's recommendation of censure or impose a different penalty.

Since this Court's adjudication is unfettered by the Commission's recommendations, the Court may remove a judge even if the Commission has suggested a lesser sanction, such as censure. *Hardy*, 294 N.C. at 97-98, 240 S.E.2d at 373 (1978) (holding that "G.S. 7A-376 and -377 authorize and empower the Court . . . to make the final judgment whether to censure, remove, remand for further proceedings or dismiss the proceeding"). Thus, this Court's options in the instant case are not constrained by the Commission's recommendation.[2] Having reviewed and evaluated the record in this case in its

2. The recent amendments to N.C.G.S. § 7A-376 explicitly codify the option of "suspension" as a potential course of action in addition to the two other sanctions

entirety, we conclude that respondent's course of conduct is sufficiently egregious to warrant measures stronger than the censure proposed by the Commission.

Respondent's misconduct here is of a significantly greater magnitude than that present in other recent cases where we have held censure to be appropriate. *See, e.g., In re Hill*, 357 N.C. 559, 591 S.E.2d 859 (2003) (censuring judge for verbally abusing an attorney and for sexual comments and horseplay); *In re Brown*, 356 N.C. 278, 570 S.E.2d 102 (2002) (censuring judge when on two occasions, the judge caused his signature to be stamped on orders for which he did not ascertain the contents and effect); *Stephenson*, 354 N.C. 201, 552 S.E.2d 137 (2001) (censure imposed when the judge solicited votes for his reelection from the bench); *In re Brown*, 351 N.C. 601, 527 S.E.2d 651 (2000) (censure appropriate when the judge consistently issued improper verdicts). Here, respondent's conduct has crossed the threshold from conduct prejudicial to the administration of justice, which would typically warrant a censure, to willful misconduct. Willful misconduct is more serious than conduct prejudicial to the administration of justice and thus merits greater sanctions. *In re Royster*, 361 N.C. 560, 563, 648 S.E.2d 837, 840 (2007) (citing *Peoples*, 296 N.C. at 157, 250 S.E.2d at 918 (1978)).

We have previously outlined what constitutes willful misconduct in office:

> Willful misconduct in office denotes "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence. While the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present."

*In re Stuhl*, 292 N.C. 379, 389, 233 S.E.2d 562, 568 (1977) (citing *In re Edens*, 290 N.C. 299, 226 S.E.2d 5 (1976)); *see also Nowell*, 293 N.C. at 248, 237 S.E.2d at 255. In the instant case, our attention is particularly drawn to respondent's testimony under oath regarding his attempts to procure a remittal of disqualification with respect to attorney Dummit. The Commission found that respondent directed Dummit to prepare a remittal of disqualification "disclosing the landlord-tenant relationship existing between respondent and Mr. Dummit and deeming it 'insubstantial and immaterial pursuant to the opinion rendered

---

of "censure" or "removal". *See* Act of July 20, 2006, Ch. 187, Sec. 11, 2006 N.C. Sess. Laws 689, 692 (effective January 1, 2007).

**IN RE BADGETT**

[362 N.C. 202 (2008)]

by the Judicial Standards Commission.' " The Commission found that no such opinion had been rendered by the Commission or its Executive Secretary, Mr. Ross.

In addition, although respondent testified under oath that he did not direct Dummit to prepare the remittal, plenary evidence contradicted him. Respondent's own testimony indicated that he communicated with Paul Ross of the Commission regarding the remittal and yet it was Dummit who drafted the document. We also note that Tom Langan testified that he was present when respondent told an associate from Dummit's law firm to have Dummit draft the remittal.

Further, the Code of Judicial Conduct requires that agreements to a remittal of disqualification be reached independently of the judge's participation. Yet the Commission found that respondent contacted Mr. Bowman on multiple occasions in an effort to obtain his consent to the document. The Commission also found that respondent told Mr. Bowman that Paul Ross had said that Bowman needed to sign the document and the Commission's investigation was over. Neither of these statements was true. In addition, the Commission also determined that respondent became angry and threatened Mr. Bowman upon his refusal to sign the form. The Commission made an explicit determination that respondent's "testimony concerning his conversation at the bench with Mr. Bowman was not credible."

This course of events is especially troubling because respondent was under oath and sworn to tell the truth. We highlight, in this vein, at least three inappropriate actions by respondent: (1) his participation in the preparation of a remittal of disqualification, despite provisions of the Code of Judicial Conduct to the contrary; (2) his untruthful statements concerning the state of the investigation and the opinions purportedly tendered by the Commission and Paul Ross; and (3) his pressure on Mr. Bowman to sign the remittal, using threats and the power of his office.

The last issue is of particular concern, since at the time of the exchange, respondent was presiding over a courtroom. Ensconced on the bench and surrounded by the accouterments and trappings of his office, the tenor of his demands carried an air of menace which gave rise to the unavoidable inference that he sought to use the powers of his position to obtain a personal favor which was beyond the legitimate exercise of his authority. The use of the office to threaten and coerce Mr. Bowman was particularly inappropriate and is an issue of the gravest concern for this Court.

We hold that these actions constitute an improper or wrongful use of the power of his office acting intentionally or with gross disregard for his conduct and in bad faith. This being so, we further hold that respondent is guilty of gross misconduct. *See Stuhl,* 292 N.C. at 389, 233 S.E.2d at 568. At a time when the requirements of the Rule of Law subject the judiciary to intense and ever greater scrutiny by our citizens, the demands of respondent's judicial office required him to comport himself with dignity, reserve, and probity. The integrity of the office requires that its holder project nothing less than the high standards of character and rectitude citizens should expect from their judges. Respondent has singularly failed to live up to these standards.

Now, therefore, it is ordered by the Supreme Court of North Carolina in conference that respondent Mark H. Badgett be, and is hereby, CENSURED and SUSPENDED from office as a Judge of the General Court of Justice, District Court Division, Judicial District Seventeen-B, for SIXTY days from entry of this order for conduct in violation of Canons 1, 2A, 2B, 3A(2), 3A(3), 3A(4), and 3D of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute, willful misconduct, and willful and persistent failure to perform his duties in violation of N.C.G.S. § 7A-376.

By order of the Court in Conference, this 6th day of March, 2008.

Hudson, J.
For the Court