IN RE: INQUIRY CONCERNING A JUDGE, NO. 08-174 DENISE S. HARTSFIELD,
RESPONDENT

No. 453A11

(Filed 9 March 2012)

**1. Judges— findings and conclusion of Judicial Standards Commission—traffic court dispositions—adopted**

The findings of the Judicial Standards Commission concerning the disposition of traffic court cases by a judge were supported by clear, cogent, and convincing evidence, and the Commission's conclusion that the judge's conduct was willful, violated the Code of Judicial Conduct, and was prejudicial to the administration of justice was adopted by the North Carolina Supreme Court.

**2. Judges— suspension without pay—traffic court dispositions—egregious—continued after warning**

A judge was suspended for seventy-five days without pay where her conduct in disposing of traffic court cases was egregious and continued after a prior warning by the Judicial Standards Commission, although she cooperated in the Commission's investigation and did not challenge the Commission's findings nor its conclusions.

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered 23 September 2011 that respondent Denise S. Hartsfield, a Judge of the General Court of Justice, District Court Division, Judicial District Twenty-One of the State of North Carolina, be suspended for conduct in violation of Canons 1, 2A, 3A(1), 3A(4), and 5F of the North Carolina Code of Judicial Conduct and for willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Heard in the Supreme Court on 11 January 2012.

*Nancy A. Vecchia, Counsel for the Judicial Standards Commission.*

*Crumpler Freedman Parker & Witt, by Dudley A. Witt and David B. Freedman, for respondent-appellant.*

**IN RE HARTSFIELD**

[365 N.C. 418 (2012)]

## ORDER OF SUSPENSION

As a result of conduct inappropriate to her judicial office, on 23 September 2011, the Judicial Standards Commission (Commission) entered a recommendation that this Court suspend respondent, Denise S. Hartsfield, a Judge of the General Court of Justice, District Court Division, Judicial District Twenty-One, without compensation from the performance of her judicial duties for a suitable period of time. For the reasons that follow, this Court concludes respondent should be suspended without compensation from the performance of her judicial duties for seventy-five days.

On 11 August 2008, Counsel for the Commission notified respondent that the Commission had ordered a formal investigation into her conduct. Respondent learned the Commission would focus its inquiry on the discovery of "82 pink copies of traffic citations and a list of those cases in a vacant judge's chambers that appear to have been handled by [respondent] by moving the citations off their scheduled court dates and adding them to traffic dockets that [respondent] presided over." Counsel informed her that the Commission ordered this investigation after receiving a written complaint from the District Attorney for Prosecutorial District Twenty-One and the Clerk of Superior Court for Forsyth County.

Respondent addressed her conduct in a letter to the Commission dated 16 July 2008 and captioned "Self Report/ Possible Ethical Violation." In this letter respondent generally described two relevant types of conduct. First, respondent informed the Commission that she "may have added seventy plus cases" to her traffic docket in the preceding two years. Respondent asserted that she had done so in response to requests from "public defenders, private attorneys, [and] citizens" for "varied" reasons, including assisting those who missed court dates or aiding individuals in the military. Respondent described her practice in these matters as having "one clerk" add the cases onto her traffic docket "due to his experience in that office." Respondent would then review a defendant's criminal record and "enter judgment, generally continuing judgment, [imposing] a nominal fee with no cost, or . . . only . . . cost with no fine." Second, respondent explained to the Commission that her practice in Driving While License Revoked (DWLR) cases had been to "make sure that there were no alcohol related offenses on the record and either continue judgment and waive cost or allow the defendant to plead not guilty. In a few cases [she] would take a dismissal by the court on [her] own motion." Respondent intimated that she disagreed with the policy

of the District Attorney's Office not to dismiss DWLR charges "even when the defendant appears in open court with a valid NC driver's license." Respondent, however, stated that she discontinued her practice after she learned she did not have "jurisdiction" to handle DWLR cases in this manner.

After the formal investigation, Counsel for the Commission filed a Statement of Charges essentially alleging that respondent engaged in a pattern of conduct in which she or a member of the court staff would add cases to her traffic court docket with the understanding that respondent would enter a favorable judgment in those matters. Counsel asserted that respondent would engage in ex parte communications with defendants appearing before her, including her friends, members of her church, acquaintances, law students, and others, and then enter beneficial judgments for those individuals. Counsel detailed numerous cases in which this conduct allegedly occurred. Counsel charged that respondent undertook these actions without the consent of the District Attorney and did so contrary to "normal court procedures" and our General Statutes.

Respondent answered on 18 April 2011, admitting some of the allegations contained in the Statement of Charges. On 7 September 2011, respondent, her attorneys, and Counsel for the Commission filed numerous stipulations regarding procedural and evidentiary facts. The Commission heard this matter on the same day and on 23 September 2011, entered its recommendation, which contains the following:

### STIPULATED EVIDENTIARY FACTS

1.   Judge Hartsfield engaged in a pattern of conduct in which she dismissed Driving While License Revoked (DWLR) cases, and other traffic citations, without hearings and without authorization of the prosecuting authority. Judge Hartsfield, in her letter dated July 16, 2008 and received by the Commission on or about July 28, 2008, acknowledged that she had engaged in a practice of dismissing cases without hearings and without the consent of the District Attorney's office.

2.   Judge Hartsfield admitted in her letter that it was her practice, in certain non-alcohol related cases, to dismiss the charge of Driving While License Revoked (DWLR) on her own motion without hearing evidence from the District Attorney's office, continue judgment and/or waive costs. Judge Hartsfield, in her letter to the Commission, stated that the District Attorney's policy was not to

dismiss the DWLR charges even after the defendant appeared in open court with a valid license.

3. On August 14, 2008 Judge Hartsfield gave a statement to Special Agent in Charge K. Perry of the State Bureau of Investigation (SBI). When asked whether or not she engaged in a practice of dismissing tickets without hearing evidence from the District Attorney's office, Judge Hartsfield stated she had fundamental and philosophical differences with the Assistant District Attorney handling these traffic matters. Judge Hartsfield stated to Agent Perry during her August 14, 2008 interview that she felt justified in ruling in such a manner because she believed that the District Attorney's policy punished the defendants after they had done what they needed to do to obtain a valid driver's license. For this reason Judge Hartsfield stated she would dismiss, from the bench, the DWLR charge if the defendant did not have any alcohol related offenses.

4. Judge Hartsfield stated during her August 14, 2008 interview with Agent Perry that she later spoke with James Drennan, a professor at the University Of North Carolina School Of Government, who informed her that she did not have jurisdiction to dismiss charges of DWLR in this manner. Judge Hartsfield stated that subsequent to her conversation with [Professor] Drennan, she ceased dismissing DWLR charges. (Brackets in original.)

5. Judge Hartsfield stated in both her July 2008 letter to the Commission and in her August 2008 interview with Special Agent Perry, [that] she engaged in this practice because she disagreed with the District Attorney's policy on handling certain DWLR cases. (Brackets in original.)

6. In her July 16, 2008 letter, Judge Hartsfield stated that for two years prior to the date of her letter she has allowed over seventy cases to be added to her traffic docket. The cases described . . . below[ ] are but a sampling of the cases that were either on Judge Hartsfield's traffic calendar or added to her calendar, wherein she entered favorable dispositions. Judge Hartsfield stated there were multiple reasons as to why the cases were added and multiple sources such as court staff, law enforcement, court employees, defense attorneys and defendants that had requested cases be added to her traffic calendar.

7. During the August 14, 2008 interview with Agent Perry, Judge Hartsfield stated that she was aware of other people

involved in the court system bringing citations to her court or requesting assistance in cases for people they knew. Judge Hartsfield stated the most common reason the matters were added to her court docket was for help with court costs or in getting a prayer for judgment continued. Judge Hartsfield stated to Agent Perry that in order for the cases to be before her the citations had to be moved from one courtroom and added to her traffic court. Judge Hartsfield stated in her July 16, 2008 letter to the Commission it was her usual procedure to ask a particular clerk to add the cases to her docket, due to his experience in that office. Judge Hartsfield stated that once the matters came before her either pursuant to the printed court calendar or added to her traffic calendar, her usual policy was to have the prosecutor look up the criminal record of the defendant, and then she entered judgment, generally continuing judgment with a nominal fine with no costs or by imposing costs with no fine.

8.   Judge Hartsfield stated in her July 16, 2008 letter that she would either impose a small fine with no costs or impose no fine but include court costs as part of her judgment.

9.   Judge Hartsfield heard traffic tickets and misdemeanor cases without following normal court procedures. Court staff and colleagues were allowed to add cases to her traffic calendar. In addition, Judge Hartsfield allowed people with whom she attended church, law students and acquaintances with whom she came into contact, to give her traffic citations they had received and she would then pass judgment on these matters. These cases were handled by Judge Hartsfield either after direct *ex parte* communications with the defendants seeking assistance with their cases or by implied *ex parte* communications with her co-workers, whereby it was understood these matters were being added to Judge Hartsfield's traffic calendar or brought to her attention in some manner, so she could enter favorable dispositions. Judge Hartsfield stated in her July 16, 2008 letter and in her August 14, 2008 interview with Agent Perry that she knew the matters were brought before her for extra assistance in resolving their cases. Judge Hartsfield stated in her January 21, 2010 interview with Agent Perry that her actions do appear to be "kinda Robin Hoodish".

10.   Judge Hartsfield passed judgment on certain traffic tickets and misdemeanor cases in the absence of the defendant and/or without legal counsel on defendant's behalf. N.C.G.S.

**IN RE HARTSFIELD**

[365 N.C. 418 (2012)]

§ 15A-1011(a) states in part that a plea may be received only from the defendant in open court or in certain specific instances with written waivers of appearances or written consent to judgments signed by the defendant/respondent.

11. Judge Hartsfield in her January 21, 2010 interview with Agent Perry during the investigation of these matters acknowledged her practice of not requiring mandatory appearances in court for respondents/defendants whose cases were before her for disposition. Judge Hartsfield stated it was her understanding that the law prior to 2007 or 2008 did not require a judge to enter judgments only when the defendant appeared before the court and entered a plea or when a written waiver was provided with legal counsel appearing on the defendant's behalf.

12. In the relevant matters under investigation, a review of the court records revealed that many of the cases were designated as misdemeanor criminal matters with tan shucks and CR numbers assigned to them. These cases require the defendant to appear in court or to have legal counsel appearing on the defendant's behalf. Cases that are designated as infractions may be handled without a court appearance by the respondent, but only after the respondent has signed a waiver of appearance and consent to judgment as charged with payment of fine and costs to the clerk's office or magistrate's office.

13. Of the seventy plus matters that Judge Hartsfield has acknowledged were added to her traffic calendar, many of the court files reflected pleas entered or left blank and verdicts entered in the matter(s) followed by judgment continued, with costs stricken by Judge Hartsfield.

14. A review of the court files indicated that at the time the matters were handled by Judge Hartsfield there were no filings which indicated that the defendants were present in court, had signed and filed waivers of appearances and consent to judgments, or were represented by counsel authorized to enter pleas on their behalf.

15. Judge Hartsfield, in the absence of the defendant, allowed pleas of guilty/responsible to be entered and then as the presiding judge entered judgments in said cases all without a valid assessment of the facts or arguments from the parties.

16. Judge Hartsfield, by handling certain traffic and misdemeanor cases in the manner outlined in paragraphs [22] through

[53], has engaged in a pattern of conduct of practicing law in violation of Canon 5F of the North Carolina Code of Judicial Conduct. (Brackets in original.)

17. In the January 21, 2010 interview with Agent Perry, Judge Hartsfield was asked about when she would require a defendant to appear in court. Judge Hartsfield stated that for non-waivable offenses she would require the defendant to be present. Judge Hartsfield stated it was her understanding that non-waivable offenses included DWI charges, school bus stop sign violations, and speeding tickets in which the person is charged 26 mph over the posted speed limit.

18. Judge Hartsfield stated in her interview with Agent Perry, when asked about her handling of Forsyth County Clerk of Courts File No. to 07 CR 700806, *State of North Carolina v. Edward Levon Lowery, Jr.*, in the absence of the defendant who was charged with speeding 94 mph in a 65 mph zone, that the law prior to 2007 or 2008 would not have required the defendant to appear in court.

19. Judge Hartsfield acknowledges there were times when she took copies of citations from acquaintances, individuals she knew from church and her community and from some of her students at Wake Forest Law School.

20. During her August 14, 2008 interview with Agent Perry, Judge Hartsfield stated that when anyone gave her a copy of their citation, she would tell them to get their court date moved to 1A and she would speak to the Assistant District Attorney and see if she could help them. In addition, respondent stated she had recently read *In re Martin*, and she did not know it was considered *ex parte* communication for her to speak to people about their tickets outside of court.

21. Over the relevant period of time in question Judge Hartsfield continued to enter beneficial judgments to certain defendants/respondents after *ex parte* communications with the defendants/respondents themselves or through implied *ex parte* communications with court staff and co-workers as set forth in the factual allegations in paragraphs [22] through [53] below. (Brackets in original.)

22. On or about June 14, 2007 Forsyth County Clerk of Courts File No. to 07 CR 700806, *State of North Carolina v. Edward*

*Levon Lowery, Jr.*, appeared on the [sic] Judge Hartsfield's traffic calendar. Mr. Lowery was charged with speeding 94 mph in a 65 mph zone in the city of Winston-Salem, North Carolina. Judge Hartsfield, in the absence of the defendant, entered or instructed the clerk to a plea of guilty/responsible, entered a verdict of guilty/responsible and ordered the judgment continued upon payment of the costs. The court record indicated that Judge Hartsfield then struck the payment of costs from the judgment. The court file does not contain any written waiver of appearance or consent to judgment, nor is there any record of an attorney appearing on behalf of Mr. Lowery.

23. Judge Hartsfield does not contest the substance of Mr. Lowery's statement to the SBI nor does she contest the credibility of Mr. Lowery and consents to the admission of his statement as substantive evidence. In a statement to the SBI, Lowery indicated that he did not hire an attorney to assist him with his speeding ticket. He explained he gave his ticket to Judge Hartsfield, and she handled it for him. Lowery came to know Judge Hartsfield during the period of time when he worked at CVS, and Judge Hartsfield picked up medicine for her mother. After Lowery received the ticket, he spoke to Judge Hartsfield about helping him with his speeding ticket as it was his first ticket. He explained that Judge Hartsfield told him not to worry about it since it was his first ticket and he gave her his copy of the ticket. Lowery indicated that he did not offer or give Judge Hartsfield anything to help him with his ticket and she never asked him for anything in return. Lowery does not know what was done with his ticket.

24. Judge Hartsfield, on January 21, 2010 in an interview with Agent Mayes and Agent Perry, stated that she would require a defendant to be in court if they were charged with speeding 26 mph over the posted speed limit. When informed that Mr. Lowery did not appear in court when his matter was disposed of, Judge Hartsfield stated that if it was prior to October 2007 or 2008 the defendant would not have been required to appear in court. Judge Hartsfield stated she had no recollection of Lowery giving his ticket to her while in CVS. Judge Hartsfield admitted she often goes to CVS to pick up medications for her mother. Judge Hartsfield stated that if Lowery was on her calendar or added to the calendar by a clerk, the matter would have been called by the

Assistant District Attorney assigned to court that day. Judge Hartsfield stated she would not have added the matter herself, but would have instructed the clerk to add the matter to the calendar. Judge Hartsfield stated during her January 21, 2010 interview, that if she had been given a ticket by someone, she would tell the person to let her check out their traffic record before she did anything.

The evidentiary stipulations contained in paragraphs 25 through 53 are generally similar to those in paragraphs 22 through 24. They contain representative examples of respondent's conduct in specific cases that support the allegations against her. After the Commission recited the stipulated facts, it made the following additional findings of fact based on evidence presented by Counsel for the Commission and by respondent.

54. During the court week of December 10-14, 2007 Judge Hartsfield dismissed, on her own motion and without the consent of the State, eleven citations in which the defendants had been charged with Driving While License Revoked (DWLR) without permitting the State to offer evidence. Judge Hartsfield entered these dismissals because she disagreed with the policies of the Forsyth County District Attorney with respect to the prosecution of these cases.

55. Over a period of time beginning at least as early as 2007 and continuing until the summer of 2008, Judge Hartsfield was aware of a practice within the Forsyth County District Court by which various persons employed by the County, or by the courts, would take to Julia Frye, a District Court judicial secretary, or to Jason Pollard or Elaine Shannon, deputy clerks employed in the District Court division, traffic citations which had been issued to friends, family members, or acquaintances and request assistance with the disposition of the tickets. The Commission finds that Leon Massey, a maintenance worker for the County, gave Ms. Frye at least one such citation which had been issued to a fellow church member and also gave citations which had been issued to members of Massey's family or co-workers to Jason Pollard. Massey requested Ms. Frye and Mr. Pollard to help these people with their tickets. The Commission also finds that Tanya Fisher, an assistant to the District Court judges, gave Mr. Pollard citations which had been issued to two acquaintances with a request that he assist these persons with their infractions.

**IN RE HARTSFIELD**

[365 N.C. 418 (2012)]

56. Upon receiving the citations, Ms. Frye, Ms. Shannon and Mr. Pollard would arrange for the case to be placed on "add-on" calendars for Judge Hartsfield's traffic court dates. Judge Hartsfield then engaged in a pattern and practice of entering dispositions in those misdemeanor criminal offenses and traffic infractions which were placed on her traffic court calendars without complying with the requirements of Articles 57 and 66 of Chapter 15A of the North Carolina General Statutes, and in particular the provisions of N.C. Gen. Stat. §§ 15A-1011(a) and 15A-1114(d). Specifically, Judge Hartsfield would instruct court personnel to enter, on behalf of persons who were not represented by counsel, were not present in court and had not waived their appearance or consented to judgment, pleas of guilty or responsible, after which Judge Hartsfield would enter dispositions based upon such pleas. The Commission finds that Judge Hartsfield was aware that the defendants/respondents were not present in court, and in most instances, was aware of the general circumstances of how the matters came to be placed on her calendar.

57. In her testimony before the Commission, Judge Hartsfield acknowledged, and the Commission finds, that she had engaged in *ex parte* communications with, and personally accepted traffic citations from, members of her church, other acquaintances, or her students at the Wake Forest University Law School with respect to their matters pending before the court, and had taken such citations to the assistant district attorney in the administrative traffic court, known as "1B", with a request for assistance, or, on some occasions, had instructed that these citations be placed on her own docket so that she could enter a disposition continuing prayer for judgment and striking the costs.

58. The Commission finds that Judge Hartsfield accepted a citation from Lonnie Nesmith, an acquaintance from her church, and added it to her calendar and dismissed it.

59. During the period of time relevant to the Statement of Charges filed in this case, Judge Hartsfield entered dispositions in no less than 82 cases in violation of the provisions of N.C. Gen. Stat. §§ 15A-1011(a) and 15A-1114(d).

60. There is no evidence that Judge Hartsfield sought, expected, or received any gift, gratuity, compensation or other personal gain by reason of the acts described above.

61. On 3 October 2006, Judge Hartsfield was privately cautioned by the Judicial Standards Commission for engaging in *ex parte* communications with a person who had a matter before the court and having improperly amended the judgment of another judge in response to that *ex parte* request for assistance. Much of the conduct involved in the Statement of Charges in the present proceeding is substantially similar to that for which Judge Hartsfield was previously cautioned in that it involves acting in a manner contrary to law in response to *ex parte* communications.

62. In engaging in the conduct and committing those acts as hereinabove found by the Commission, Judge Hartsfield acted purposefully and willfully and knew or should reasonably have known that her conduct was contrary to law and to the requirements of the North Carolina Code of Judicial Conduct in the respects alleged in the Statement of Charges.

63. Judge Hartsfield has engaged in the legal profession in various capacities in the Forsyth County community for approximately twenty years, and has served as a District Court Judge for approximately nine years. She has been an active and contributing member of the community, personally and professionally, and except for the conduct giving rise to the 2006 letter of caution and the conduct giving rise to the current Statement of Charges, enjoys a good reputation in the community and as a judge.

After adopting the stipulated facts and making its own additional findings, the Commission concluded that respondent's conduct violates Canons 1, 2A, 3A(1), 3A(4), and 5F of the North Carolina Code of Judicial Conduct, constitutes willful misconduct in office, and is prejudicial to the administration of justice which brings the judicial office into disrepute. The Commission unanimously recommended that respondent be suspended "from the performance of her judicial duties for such period of time and upon such conditions" as this Court deems appropriate.

[1] The Supreme Court "acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court" when reviewing a recommendation from the Commission. *In re Badgett*, 362 N.C. 202, 207, 657 S.E.2d 346, 349 (2008) (citations and quotation marks omitted). Neither the Commission's findings nor its conclusions are binding on this Court. *Id.* at 206, 657 S.E.2d at 349 (citation omitted). We are free to "adopt the Commission's findings of fact if they are supported by clear and convincing evidence, or [we] may make [our] own findings." *Id.*

(citations and quotation marks omitted). Accordingly, the scope of our review of the Commission's recommendation is as follows: "[T]his Court must first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law." 362 N.C. at 207, 657 S.E.2d at 349.

The Commission found the stipulated facts and its additional findings to be supported by "clear, cogent and convincing evidence." Respondent does not contest the findings made by the Commission. After careful review, we agree that the Commission's findings are supported by clear, cogent, and convincing evidence, and we now adopt them as our own. Furthermore, we agree with the Commission's conclusions that respondent's conduct violates Canons 1, 2A, 3A(1), 3A(4), and 5F of the North Carolina Code of Judicial Conduct, and amounts to willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. We note also that respondent does not contest that the Commission's findings support its conclusions of law.

[2] Because respondent has violated several canons of the North Carolina Code of Judicial Conduct and section 7A-376 of our General Statutes, we now consider the discipline to which she will be subjected. In arriving at a disciplinary decision, this Court employs its own judgment and "is unfettered by the Commission's recommendations." *Id.* at 207, 657 S.E.2d at 350 (citation omitted). We may adopt the Commission's recommendation, or we may impose a lesser or more severe sanction. *Id.* The Commission recommended that respondent be suspended from the performance of her judicial duties, but did not offer any recommendation on the term of such suspension or any conditions of it. Respondent does not contest that the Commission's facts and conclusions, which we have made our own, support a disciplinary order but asks that the suspension, if any, be brief.

This Court has only once previously suspended a judge of the General Court of Justice. *See In re Badgett,* 362 N.C. at 365, 657 S.E.2d at 351. In that case we concluded that Judge Mark H. Badgett engaged in "conduct prejudicial to the administration of justice that brings the judicial office into disrepute, willful misconduct, and willful and persistent failure to perform his duties in violation of N.C.G.S. § 7A-376." *Id.* at 207, 657 S.E.2d at 350. We observed that Judge Badgett had given incredible testimony while under oath, made

untruthful comments regarding an investigation, and attempted to use the power of his office to coerce the District Attorney, including while presiding over a session of court. *Id.* at 208-09, 657 S.E.2d at 350-51. We ultimately held that Judge Badgett's "actions constitute an improper or wrongful use of the power of his office acting intentionally or with gross disregard for his conduct and in bad faith." *Id.* at 365, 657 S.E.2d at 351. Given the gravity of Judge Badgett's conduct, this Court censured him and suspended him for sixty days, *id.*, and we later removed him from office, *In re Badgett*, 362 N.C. 482, 491, 666 S.E.2d 743, 749 (2008).

Respondent in the case *sub judice* contends that her conduct does not rise to the level of the "bad faith" or "gross misconduct" present in *In re Badgett*. She argues that her misconduct is similar to the actions seen in *In re Hardy*, 294 N.C. 90, 240 S.E.2d 367 (1978), and *In re Brown*, 351 N.C. 601, 527 S.E.2d 651 (2000). In *In re Hardy* the judge was censured for, *inter alia*, entering several judgments in traffic matters while court was not in session and without the knowledge or consent of the assistant district attorneys prosecuting the cases. 294 N.C. at 92-93, 98, 240 S.E.2d at 369-70, 373. In *In re Brown* the judge was found to have engaged in willful misconduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and he was censured for, *inter alia*, entering several improper judgments in Driving While Impaired cases. 351 N.C. at 605-08, 611, 527 S.E.2d at 654-56, 658. As respondent acknowledges, however, both of these cases were decided before this Court received the authority to suspend a judge as a sanction, when the only options were censure and removal, and therefore, they offer little guidance regarding the appropriate discipline.

We believe the facts of this present matter to be similar to those found in *In re Peoples*, 296 N.C. 109, 250 S.E.2d 890 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). In *In re Peoples* the judge was removed and disqualified from holding further judicial office as a result of a pattern of conduct spanning a number of years in which he, *inter alia*, held pending cases in several special files to dispose of them later in an irregular manner. *Id.* at 156-57, 250 S.E.2d at 917-18. When Judge Linwood T. Peoples's files were discovered, they contained forty-nine cases and had been in existence "for more than three years and probably as long as seven years," during which time " 'cases were disposed of and new ones added.' " *Id.* at 155, 158, 250 S.E.2d at 917-18. We observed that Judge Peoples's conduct "had become well-enough known to his friends and their acquaintances, so

that they did not hesitate to seek his aid when confronted by a traffic ticket for speeding, a warrant for driving drunk, or any infraction by which their drivers license was threatened by either revocation or 'points.' " *Id.* at 158, 250 S.E.2d at 918. Judge Peoples resigned from his position in an attempt to evade the consequences of his actions and declined even to attend the hearing concerning the allegations against him. *Id.* at 112-14, 250 S.E.2d at 894-95. Judge Hartsfield's practice in the matter *sub judice* is similar in duration, volume, and apparent notoriety to that for which Judge Peoples was removed from office.

It is important to note that the discipline imposed in any given case "will be decided upon its own facts." *In re Hardy*, 294 N.C. at 98, 240 S.E.2d at 373. Judge Hartsfield's conduct is egregious. Respondent disposed of at least eighty-two cases in violation of our General Statutes. Her misconduct is similar only to *In re Peoples* in the sheer number of cases involved. *See In re Brown*, 351 N.C. at 605-08, 527 S.E.2d at 654-56 (describing improper conduct in two traffic matters); *In re Hardy*, 294 N.C. at 92-93, 240 S.E.2d at 369-70 (recounting misconduct in five traffic matters). It is reasonable to conclude that the actual number of cases of which respondent has irregularly disposed is much higher, given that she has been a Judge of the General Court of Justice for approximately nine years and the conduct at issue here appears to be, or to have been, her regular practice. Much more troubling than the number of cases involved is that respondent engaged in this pattern of behavior after she was privately cautioned by the Commission in 2006 for substantially similar conduct. As observed by the Commission, respondent charted this course "purposefully and willfully and knew or should reasonably have known that her conduct was contrary to law and to the requirements of the North Carolina Code of Judicial Conduct." She undertook this conduct despite apparently knowing that it is improper, a decision we cannot abide and will not condone. On the other hand, upon learning of the allegations of impropriety against her, respondent immediately explained to the Commission what she had done. She cooperated in the Commission's investigation and has challenged neither the Commission's findings nor its conclusions of law, and respondent agrees that some discipline is warranted. Weighing the severity of her conduct against her candor and her cooperation, we conclude that suspension is appropriate. At the conclusion of her suspension, respondent may resume the duties of her office.

The Supreme Court of North Carolina orders that respondent Denise S. Hartsfield be, and is hereby, SUSPENDED without compen-

sation from office as a Judge of the General Court of Justice, District Court Division, Judicial District Twenty-One, for SEVENTY-FIVE days from the entry of this order for conduct in violation of Canons 1, 2A, 3A(1), 3A(4) and 5F of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute and willful misconduct in office in violation of N.C.G.S. § 7A-376.

By order of the Court in Conference, this the 8th day of March, 2012.

s/Jackson, J.
For the Court