IN THE SUPREME COURT OF NORTH CAROLINA

No. 215A19

Filed 27 September 2019

IN RE INQUIRY CONCERNING A JUDGE, NO. 18-070

ANGELA C. FOSTER, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered on 23 May 2019 that respondent Angela C. Foster, a Judge of the General Court of Justice, District Court Division, Judicial District Eighteen, be censured for conduct in violation of Canons 1, 2A, 3A(3), and 3A(4) of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. This matter was calendared for argument in the Supreme Court on 28 August 2019, but was determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission.

*No counsel for Judicial Standards Commission or respondent.*

ORDER

The issue before the Court is whether District Court Judge Angela C. Foster, respondent, should be censured for violations of Canons 1, 2A, 3A(3), and 3A(4) of the

North Carolina Code of Judicial Conduct amounting to conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Respondent has not challenged the findings of fact made by the Judicial Standards Commission (the Commission) or opposed the Commission's recommendation that she be censured by this Court.

On 22 August 2018, Commission Counsel filed a Statement of Charges against respondent alleging that she had engaged in conduct inappropriate to her judicial office by making inappropriate comments; by failing to remain patient, dignified, and courteous with the parties appearing before her; by failing to provide every person legally interested in a proceeding, or the person's lawyer, the full right to be heard according to the law; and by abusing the contempt power. Respondent fully cooperated with the Commission's inquiry into this matter. In the Statement of Charges, Commission Counsel asserted that respondent's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute or otherwise constituted grounds for disciplinary proceedings under Chapter 7A, Article 30 of the North Carolina General Statutes.

Respondent filed her answer on 11 September 2018. On 26 March 2019, Commission Counsel and respondent entered into a Stipulation and Agreement for Stated Disposition (the Stipulation) containing joint evidentiary, factual, and disciplinary stipulations as permitted by Commission Rule 22 that tended to support a decision of censure. The Stipulation was filed with the Commission on 2 April 2019.

*Order of the Court*

The Commission heard this matter on 12 April 2019 and entered its recommendation that same day, which contains the following stipulated findings of fact:

1. On or about January 2, 2018, Respondent presided over a contempt hearing in *Morrow v. Livesay,* Guilford County File No. 15CVD5571. The matter was calendared by the defendant Jeffery Livesay against the plaintiff Kathi Morrow, to determine whether Ms. Morrow should be held in contempt after the parties' fifteen (15) year old twin sons, who reside with her, refused to visit with their father Mr. Livesay during the winter holiday.

2. At the contempt hearing on or about January 2, 2018, Ms. Morrow's counsel appeared on her behalf and objected to the court's consideration of the contempt motion on the grounds that Ms. Morrow received insufficient notice of the hearing.

3. Respondent acknowledged counsel's objection as to timely notice of the hearing, but instead of continuing the matter, ordered Ms. Morrow and the twin boys to appear in court within thirty (30) minutes. At that time, Respondent stated that "I'm not saying that we're going through with the hearing, but you need to call your client and tell her to get here because I have a few choice words that I need to say to her . . . ." Respondent further stated that "the boys need to come . . . so that they can hear that their mother can go to jail for their behavior . . . "[a]nd [sic] if a child wants their parent to go to jail, I got a problem with that as well."

4. When Ms. Morrow and the teenage twin boys arrived, Respondent convened the hearing again and asked Ms. Morrow and her sons to stand, and swore them in as if to give testimony. At that time, Respondent began to question the two boys regarding their refusal to participate in the court ordered visitation with their father and inquired of the boys whether they understood that their mother could be incarcerated for contempt if they continued to resist visitation with their father.

5. After the boys told Respondent that they would rather have their mother go to jail than visit with their father, Respondent became deeply concerned and

stated "my children would never allow me to go to jail for any reason whatsoever . . . I'm appalled because my children respect me so much they would never allow that to happen." Respondent vigorously questioned and explained the profound significance and detrimental impact their refusal to visit with their father would have on themselves and their mother.

6.     After hearing from the boys that they had an understanding of the consequences of their refusal to comply with a court order, Respondent then ordered the bailiff to handcuff Ms. Morrow and place her in a holding cell. Ms. Morrow's counsel immediately objected to the decision to put her into custody because no contempt hearing had taken place and neither counsel nor his client were given an opportunity to be heard. Respondent nevertheless instructed the bailiff to take Ms. Morrow to a holding cell over her counsel's objections.

7.     After Ms. Morrow was handcuffed and removed from the courtroom, Respondent again asked the twin boys to stand and then proceeded to convey to them how "appalled" she was at their behavior and how "ashamed" they should be of themselves for allowing their mother to go to jail for their behavior. During this colloquy, Respondent also lectured the twin boys about her personal experiences as a parent as well as her experiences as a certified juvenile judge. Respondent shared personal stories, as well as disturbing cases she had presided over where children had suffered unfortunate outcomes.

8.     Respondent informed the boys that if their mother was found in contempt, she would go to jail for sixty (60) days and explained that meant they would be in their father's custody for that entire time. Respondent appealed to the boys' sense of reason by questioning whether it made more sense to spend six (6) days of visitation with their father as originally ordered, or sixty (60) days while their mother was incarcerated. The boys finally relented and agreed to visit their father.

9.     After reaching this understanding with the boys, Respondent then asked to have Ms. Morrow brought back into the courtroom and commented "as far as your full-blown hearing, it is going to be continued. You two

need to pick a date because I do not believe that you [had] enough time to truly prepare."

10.     At the conclusion of the hearing, both parties thanked Respondent for her efforts trying to resolve the boys' refusal to visit with their father.

11.     Respondent believed that her actions in ordering Ms. Morrow to be handcuffed and put into custody without a hearing, opportunity to be heard, or written order were appropriate to deescalate an unfortunate situation and resolve the visitation issues without further involving the Court. Respondent has previously placed litigants in temporary custody for a short "cooling-off period" without an opportunity to be heard and found that practice to be successful in getting litigants to comply with the Court's directives. After such temporary detention, Respondent typically offers the litigant an opportunity to apologize to the Court in lieu of facing a contempt hearing and a jail sentence.

12.     Respondent acknowledges that she specifically intended to have Ms. Morrow handcuffed and taken into custody without a hearing and that this decision was an improper or wrongful use of the power of her judicial office and that she knew or should have known that doing so was beyond the legitimate exercise of her authority.

(Brackets in original and citations to pages of the Stipulation omitted.)

Based on these findings of fact, the Commission concluded as a matter of law

that:

1.     Canon 1 of the Code of Judicial Conduct sets forth the broad principle that "[a] judge should uphold the integrity and independence of the judiciary." To do so, Canon 1 requires that a "judge should participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved."

2.     Canon 2 of the Code of Judicial Conduct generally mandates that "[a] judge should avoid

impropriety in all the judge's activities." Canon 2A specifies that "[a] judge should respect and comply with the law and should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3.      Canon 3 of the Code of Judicial Conduct governs a judge's discharge of his or her official duties. Canon 3A(3) requires a judge to be "patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in the judge's official capacity . . . . . [sic]" Canon 3A(4) requires a judge to "accord every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law . . . ."

4.      Upon the Commission's independent review of the stipulated facts concerning Respondent's conduct on January 2, 2018 in presiding over the contempt hearing in *Morrow v. Livesay,* Guilford County File No. 15CVD5571, and the audio and transcript thereof included with the Stipulation, the Commission concludes that Respondent:

a. failed to personally observe appropriate standards of conduct necessary to ensure that the integrity of the judiciary is preserved, in violation of Canon 1 of the North Carolina Code of Judicial Conduct;

b. failed to conduct herself in a manner that promotes public confidence in the integrity of the judiciary, in violation of Canon 2A of the North Carolina Code of Judicial Conduct;

c. failed to be patient, dignified, and courteous to litigants, lawyers and others who she dealt with in her official capacity, in violation of Canon 3A(3) of the North Carolina Code of Judicial Conduct;

d. failed to afford every person who is legally interested in a proceeding, or the person's lawyer, a full right to be heard according to the law in violation of Canon 3A(4) of the North Carolina Code of Judicial Conduct.

13.      [sic] The Commission also notes that Respondent agreed in the Stipulation that she violated the

foregoing provisions of the North Carolina Code of Judicial Conduct.

14.    The Commission further concludes that the facts establish that Respondent engaged in willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C. Gen. Stat. § 7A-376(b). *See also* Code of Judicial Conduct, Preamble ("[a] violation of this Code of Judicial Conduct may be deemed conduct prejudicial to the administration of justice that brings the judicial office into disrepute.").

15.    More than 40 years ago, the Supreme Court first defined "willful misconduct in office" as "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally in bad faith. It is more than a mere error of judgment or an act of negligence." *In re Edens*, 290 N.C. 299, 305 (1976). As the Supreme Court further explained in *In re Nowell,* 293 N.C. 235 (1977), while willful misconduct in office necessarily encompasses "conduct involving moral turpitude, dishonesty, or corruption," it also can be found based upon "any knowing misuse of the office, whatever the motive." *Id.* at 248. The Supreme Court also found that "these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith." *Id.*

16.    In keeping with this long-standing definition, the Commission finds that Respondent engaged in willful misconduct in office. In reaching this conclusion, the Commission does not review the legal issue of whether Ms. Morrow may properly have been held in contempt based on her sons' refusal to visit with their father. Respondent admits that she purposely avoided any legal ruling on the contempt issues before her and continued the hearing to a later date. Instead, the Commission considers Respondent's conduct in ordering Ms. Morrow into custody and then threatening the boys to achieve compliance with the visitation order without a contempt hearing to be intentional and willful.

17. The facts establish that Respondent acted with the specific intent to avoid what Respondent referred to as a "full-blown hearing," which Respondent admitted could not properly go forward because of inadequate notice. The facts also establish that this conduct was not a mere "error of judgment or mere lack of diligence" but was intentional and part of Respondent's admitted pattern of ordering litigants into temporary custody to achieve compliance with her directives without resort to the contempt power.

18. Importantly, Respondent has indicated that her decision to order Ms. Morrow into custody and her threats and harsh language directed to the boys were undertaken with benevolent motives to "deescalate an unfortunate situation and resolve the visitation issues without further involving the Court." Even so, "bad faith" includes "any knowing misuse of the office, whatever the motive." *In re Nowell,* 293 N.C. at 248. The facts establish that Respondent acted in bad faith because she had "[a] specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of [her] authority. [sic] *Id.* Respondent concedes this point as well.

19. Having concluded that Respondent engaged in willful misconduct in office, the Commission also concludes that Respondent's conduct amounts to conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The Supreme Court in *Nowell* explained that "willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *Nowell,* 293 N.C. at 248.

20. The Supreme Court also defined conduct prejudicial to the administration of justice in *In re Edens,* 290 N.C. 299 (1976) and stated as follows:

> Conduct prejudicial to the administration of justice that brings the judicial office into disrepute has been defined as "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to the public esteem for the judicial office." Whether the conduct of a judge may be

so characterized "depends not so much upon the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers."

*Id.* at 305–306 (internal citations omitted).

21. In the present case, regardless of what Respondent perceived to be good motives for undertaking her course of conduct, Respondent's actions in directing the bailiff to handcuff Ms. Morrow and escort her out of the courtroom without an opportunity to be heard and without any indication of contemptuous behavior by Ms. Morrow in the courtroom, and then continuing to berate and threaten Ms. Morrow's children, is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

22. As the Supreme Court recognized in *In re Nowell,* "[t]he power of the district court over the lives and everyday affairs of our citizens makes it imperative that the district court judges of the State not only be fully capable but also dedicated to carrying out their official responsibilities in accordance with the law and established standards of judicial conduct." 293 N.C. at 252. In this case, Respondent's conduct fell below the standards expected in Canon 1, Canon 2A, Canon 3A(3) and Canon 3A(4) and the facts establish that she engaged in willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

23. Respondent also acknowledges that the factual stipulations contained herein are sufficient to prove by clear and convincing evidence that her actions constitute willful misconduct in office and that she willfully engaged in misconduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C. Gen. Stat. § 7A-376.

(Brackets in original and citations to pages of the Stipulation omitted.)

Based on these findings of fact and conclusions of law, the Commission recommended that this Court censure respondent. The Commission based this

recommendation on its earlier findings and conclusions, as well as the following additional dispositional determinations:

1.      The Supreme Court in *In re Crutchfield,* 289 N.C. 597 (1975) first addressed sanctions under the Judicial Standards Act and stated that the purpose of judicial discipline proceedings "is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges." *Id.* at 602.

2.      In cases where willful misconduct in office is found, however, the Supreme Court has found that censure is an appropriate sanction. As stated in *In re Martin,* 333 N.C. 242 (1993), "Judges especially must be vigilant to act within the bounds of their judicial power. When judges knowingly act beyond these bounds, it amounts to willful misconduct which brings the judicial office into disrepute and prejudices the administration of justice. In such cases censure at least is proper." *Id.* at 245.

3.      The Commission recommends censure rather than a more severe sanction based on the following mitigating factors:

a. Respondent has been cooperative with the Commission's investigation, voluntarily providing information about the incident and accepting responsibility for her actions.

b. Respondent has been active in her community and throughout Guilford County and has served as a duly elected judge since 2008.

c. Respondent, through a written statement offered to the hearing panel expressed regret that her actions were inappropriate and offered an apology to the Livesay/Morrow family for the manner in which she handled the matter.

d. The factual stipulations as to the merits make clear that Respondent had engaged in similar conduct in the past, and therefore the Commission gives no weight to the proposed mitigating factor

that the incident involving Ms. Morrow was an isolated event.

4. The Commission and Respondent acknowledge the ultimate jurisdiction for the discipline of judges is vested in the North Carolina Supreme Court pursuant to Chapter 7A, Article 30 of the North Carolina General Statutes, which may either accept, reject, or modify any disciplinary recommendation from the Commission.

5. Pursuant to N.C. Gen. Stat. § 7A-377(a5), which requires that at least five members of the Commission concur in a recommendation of public discipline to the Supreme Court, all seven Commission members present at the hearing of this matter concur in this recommendation to **censure Respondent.**

(Emphasis in original and citations to pages of the Stipulation omitted.)

"The Supreme Court 'acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court' when reviewing a recommendation from the Commission." *In re Hartsfield*, 365 N.C. 418, 428, 722 S.E.2d 496, 503 (2012) (order) (quoting *In re Badgett*, 362 N.C. 202, 207, 657 S.E.2d 346, 349 (2008) (order)). Neither the Commission's findings of fact nor its conclusions of law are binding, but they may be adopted by this Court. *Id.* at 428, 722 S.E.2d at 503 (citing *In re Badgett*, 362 N.C. at 206, 657 S.E.2d at 349). If the Commission's findings are adequately supported by clear and convincing evidence, the Court must determine whether those findings support the Commission's conclusions of law. *Id.* at 429, 722 S.E.2d at 503 (citing *In re Badgett*, 362 N.C. at 207, 657 S.E.2d at 349).

The Commission found the stipulated facts to be supported by "clear, cogent and convincing evidence." In executing the Stipulation, respondent agreed that those

facts and information would serve as the evidentiary and factual basis for the Commission's recommendation, and respondent does not contest the findings or conclusions made by the Commission. We agree that the Commission's findings are supported by clear, cogent, and convincing evidence, and we now adopt them as our own. Furthermore, we agree with the Commission's conclusions that respondent's conduct violates Canons 1, 2A, 3A(3), and 3A(4) of the North Carolina Code of Judicial Conduct and is prejudicial to the administration of justice, thus bringing the judicial office into disrepute in violation of N.C.G.S. § 7A-376.

This Court is not bound by the recommendations of the Commission. *In re Hartsfield*, 365 N.C. at 428–29, 722 S.E.2d at 503. Rather, we may exercise our own judgment in arriving at a disciplinary decision in light of respondent's violations of several canons of the North Carolina Code of Judicial Conduct. *Id.* at 429, 722 S.E.2d at 503. Accordingly, "[w]e may adopt the Commission's recommendation, or we may impose a lesser or more severe sanction." *Id.* (citation omitted). The Commission recommended that respondent be censured. Respondent does not contest the Commission's findings of fact or conclusions of law and voluntarily entered into the Stipulation with the understanding that the Commission's recommendation would be to censure respondent.

We appreciate respondent's cooperation and candor with the Commission

throughout these proceedings. Weighing the severity of respondent's misconduct against her candor and cooperation, we conclude that the Commission's recommended censure is appropriate.

Therefore, the Supreme Court of North Carolina orders that respondent Angela C. Foster be CENSURED for conduct in violation of Canons 1, 2A, 3A(3), and 3A(4) of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376.

By order of the Court in Conference, this the 27th day of September, 2019.

s/Davis, J.
For the Court

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 27th day of September, 2019.

AMY L. FUNDERBURK
Clerk of the Supreme Court

s/M.C. Hackney
Assistant Clerk