IN THE SUPREME COURT OF NORTH CAROLINA

No. 197A18

Filed 26 October 2018

IN RE INQUIRY CONCERNING A JUDGE, NO. 17-262
RONALD L. CHAPMAN, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered 14 June 2018 that Respondent Ronald L. Chapman, a Judge of the General Court of Justice, District Court Division Twenty-six, be suspended for thirty days without pay for conduct in violation of Canons 1, 2A, 3A(5), and 3B(1) of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. This matter was calendared for argument in the Supreme Court on 30 August 2018, but determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission.

*No counsel for Judicial Standards Commission or Respondent.*

ORDER

The issue before this Court is whether District Court Judge Ronald L. Chapman should be suspended without compensation for violations of Canons 1, 2A, 3A(5), and 3B(1) of the North Carolina Code of Judicial Conduct amounting to conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Respondent has not challenged the findings of fact made by the Judicial Standards Commission (the Commission) or opposed the Commission's recommendation that he be suspended without compensation by this Court.

On 8 January 2018, the Commission Counsel filed a Statement of Charges against Respondent alleging he had engaged in conduct inappropriate to his office by failing to issue a ruling for more than five years on a motion for permanent child support. Respondent fully cooperated with the Commission's inquiry into this matter. In the Statement of Charges, Commission Counsel asserted that Respondent's actions constituted conduct inappropriate to his judicial office and prejudicial to the administration of justice constituting grounds for disciplinary proceedings under Chapter 7A, Article 30 of the North Carolina General Statutes.

Respondent filed his answer on 21 February 2018. On 5 April, Commission Counsel and Respondent entered into a Stipulation and Agreement for Stated Disposition (the Stipulation) containing joint evidentiary, factual, and disciplinary stipulations as permitted by Commission Rule 22 that tended to support a decision to suspend Respondent without compensation. The Stipulation was filed with the

Commission on 9 April. The Commission heard this matter on 11 May and entered its recommendation on 14 June 2018, which contains the following stipulated findings of fact:

1. On or about November 30, 2012, Respondent concluded presiding over a multi-day hearing in *Ives v. Ives*, Mecklenburg County File No. 10CVD15357, to determine plaintiff Laura Ives' claims for permanent child support and attorney's fees. Ms. Ives was represented by attorney Jonathan Feit and the defendant Mr. Ives was represented by attorney Dorian Gunter. At that time, the parties were subject to an October 25, 2010 order for temporary child support wherein Mr. Ives paid Mrs. Ives support in the amount of $1,725.00 per month for the four (4) Ives children. Based on Mr. Ives' income, Mrs. Ives argued at the November 30, 2012 hearing that she was entitled to $5,087.50 per month in child support and $17,490.50 in attorney's fees. Respondent reserved his ruling and took the matter under advisement.

2. On December 5, 2012, Respondent indicated to Mr. Feit that he would make his ruling a priority over the upcoming holidays. Respondent did not issue a ruling over the December 2012 holidays.

3. On January 22, 2013, Mr. Feit emailed Respondent inquiring as to the status of his ruling. The following day, Respondent replied that he was "shooting for [tomorrow] afternoon. Friday [January 25, 2013] noon at the latest." No ruling was made by Respondent that week. On January 28, 2013, Respondent emailed the attorneys that he had been in court the previous Friday, but would "continue to work on [this] order."

4. On February 27, 2013, Mr. Feit emailed Respondent, again seeking an update on the status of the ruling/order. Respondent did not respond to Mr. Feit's email.

5. On June 14, 2013, Mr. Feit emailed Respondent again to inquire as to the status of the ruling/order. Later that day, the attorneys received a response from Respondent's judicial assistant, stating that Respondent was working to resolve all of his pending domestic cases,

including the *Ives* matter.

6. On October 16, 2013, Mr. Feit emailed Respondent and his judicial assistant requesting an update and expressing the need to have the matter addressed quickly because his client was receiving insufficient child support. On October 25, 2013, Respondent replied that he would be working on the *Ives* case that coming weekend, but acknowledged there were issues they needed to discuss "due to the delay getting this to you." Several days later, Respondent followed up with another email wherein he again committed to quickly complete the ruling.

7. After another two (2) months, Mr. Feit emailed Respondent again on January 3, 2014 and stressed that the order was required to resolve ongoing financial issues. Respondent, over a month later, informed Mr. Feit on or about February 12, 2014 that he would be "taking it home with him" because the courts were closing due to inclement weather.

8. On March 10, 2014, Mr. Feit emailed Respondent again asking for a ruling. Respondent did not reply.

9. After several more months went by without a ruling from Respondent, Mr. Feit emailed Respondent on June 9, 2014 imploring him to "please let us hear from you." Respondent again did not reply.

10. On July 7, 2014, Mr. Feit emailed Respondent once again to inquire into the status of Respondent's ruling. Respondent replied two (2) days later that, barring late assignments, he was not assigned in court the following week and he would "commit to scheduling time to wrap [this] up."

11. On July 21, 2014, after the unassigned court week, Respondent informed the attorneys that he "had more court than expected" but would "give [them] a decision or update by later [this] week." No decision or update came from Respondent that week. Several weeks later, on August 19, 2014, Mr. Feit asked for an update and, again, Respondent did not reply.

12. With more than two years since the hearing on permanent child support, and in an effort to secure some action from Respondent, on December 5, 2014, Mr. Feit provided Respondent with a proposed order even though Respondent had not requested one. Upon objection from

opposing counsel as to the content of the proposed order, Mr. Feit offered to make any changes Respondent suggested. Respondent took no action on the proposed order.

13. Two (2) months later, on February 12, 2015, Mr. Feit followed up with Respondent with another email asking him to "please either sign the order as presented or let us hear from you one way or the other so we can move this matter forward." Respondent replied the following day that "you will hear from me no later than 10 days from now." Eleven (11) days later, on February 24, 2015, Respondent emailed the attorneys that because of other court assignments, he had not worked on the *Ives* matter. However, Respondent told the attorneys "[he would] work on *Ives* over the[ ] next two weekends" and during his vacation week in March. No ruling followed Respondent's vacation.

14. In an email to Respondent on April 17, 2015, Mr. Feit continued to stress the need to "move this matter along." Later that day, Respondent acknowledged in an email that he had not "held up my end of things" and "sincerely hope to get up with you soon."

15. On May 19, 2015, Mr. Feit again asked for Respondent to "please let us have your order." Respondent did not reply.

16. On July 14, 2015, Mr. Feit emailed Respondent asking to be informed whether Respondent planned to sign the proposed order. On July 23, 2015, Respondent replied that he had been out of the office, but would "communicate a substantive response about when I will have something for you by Monday." On July 27, 2015, Respondent followed up with the attorneys, notifying them that he expected to have an order to them "by a week from tomorrow."

17. A month later, Mr. Feit emailed Respondent on August 26, 2015 asking for the status of the order. Respondent did not reply.

18. On December 3, 2015, more than three years after the hearing on permanent child support, Mr. Feit emailed Respondent asking for Respondent to communicate with the attorneys as to the status of the ruling. Respondent did not reply.

19. On April 18, 2016, Mr. Feit emailed Respondent a final time requesting the order. Respondent immediately replied that "there is not a day, and seldom a night, that goes by that this case has not been on my mind. I understand your clients [sic] needs." Despite this assertion, Respondent again failed to make any ruling.

20. After the last effort to secure a ruling in April 2016 (three and a half years after the hearing), and out of concern that further contact was futile and could harm his client's interests, Mr. Feit ceased contacting Respondent regarding the ruling.

21. Over a year after this last effort by Mr. Feit, and almost five years after the November 2012 hearing, on October 16, 2017, the Domestic Unit Supervisor in the Mecklenburg County Clerk's Office emailed the attorneys in the *Ives* matter asking if Respondent had ever made a decision on permanent child support and notifying them that the court file was missing. Mr. Feit confirmed that no order had been entered because Respondent never made a ruling.

22. To date, the official *Ives* court file remains missing after being checked out by a deputy clerk on November 30, 2012 for the final day of the permanent child support hearing. Respondent acknowledges that he had in his possession an exhibit folder from the November 2012 hearing, but had been unable to locate the remainder of the file.

23. On his own motion, Respondent entered an order of recusal from the *Ives* matter filed on November 21, 2017.

24. No ruling on permanent child support has issued since the matter was concluded in late November 2012.

(brackets in original) (citations to pages of the Stipulation omitted).

Based upon these findings of fact, the Commission concluded as a matter of law that:

1.     Canon 1 of the Code of Judicial Conduct sets forth the broad principle that "[a] judge should uphold the integrity and independence of the judiciary." To do so, Canon 1 requires that a "judge should participate in

establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved."

2. Canon 2 of the Code of Judicial Conduct generally mandates that "[a] judge should avoid impropriety in all the judge's activities." Canon 2A specifies that "[a] judge should respect and comply with the law and should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3. Canon 3 of the Code of Judicial Conduct governs a judge's discharge of his or her official duties. Canon 3A(5) requires a judge to "dispose promptly of the business of the court." Furthermore, Canon 3B(1) requires a judge to "diligently discharge the judge's administrative responsibilities" and "maintain professional competence in judicial administration."

4. The Commission's findings of fact, as supported by the Stipulation, show that since the *Ives* matter was concluded on November 30, 2012, no ruling has yet to be issued and Respondent has offered no justification for the delay. These facts, coupled with the fact that the file remains missing, continues [sic] to harm the interests of the litigants in the *Ives* matter.

5. Upon the Commission's independent review of the stipulated facts concerning Respondent's un-reasonable and unjustified delay in issuing the ruling, the Commission concludes that Respondent:

    a. failed to personally observe appropriate standards of conduct necessary to ensure that the integrity of the judiciary is preserved, in violation of Canon 1 of the North Carolina Code of Judicial Conduct;

    b. failed to conduct himself in a manner that promotes public confidence in the integrity of the judiciary, in violation of Canon 2A of the North Carolina Code of Judicial Conduct;

    c. failed to dispose promptly of the business of the court, in violation of Canon 3A(5) of the North Carolina Code of Judicial Conduct;

    d. and failed to diligently discharge his

administrative responsibilities and maintain professional competence in judicial administration in violation of Canon 3B(1) of the North Carolina Code of Judicial Conduct.

6. The Commission also notes that Respondent agreed in the Stipulation that he violated the foregoing provisions of the North Carolina Code of Judicial Conduct by (1) failing to issue a ruling for more than five (5) years on the motion for permanent child support without justification, (2) failing to respond to legitimate requests from counsel as to the status of the order, (3) representing to counsel that he was diligently working on the ruling when he was not; and (4) recusing himself from the case instead of entering an order thereby causing further delay.

7. The Commission further concludes that Respondent's violations of the Code of Judicial Conduct amount to conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C. Gen. Stat. § 7A-376(b). *See also* Code of Judicial Conduct, Preamble ("[a] violation of this Code of Judicial Conduct may be deemed conduct prejudicial to the administration of justice that brings the judicial office into disrepute.").

(brackets in original) (citations to pages of the Stipulation omitted)

Based on these Findings of Fact and Conclusions of Law, the Commission recommended that this Court suspend Respondent without pay for a period of thirty days. The Commission based this recommendation on its earlier findings and conclusions and the following additional dispositional determinations:

1. As a mitigating factor, Respondent has in the past enjoyed the high regard of the legal community. As set forth in the Stipulation, Respondent ranked first in overall performance among twelve district judges in District Court Division 26 in the 2012 North Carolina Bar Association survey, and fourth among eleven district judges in the 2015 survey. An additional mitigating factor is his volunteer work on behalf of the justice system. He currently is in his

ninth year of volunteering to attend Truancy Court one morning a week at low performing schools. He also was a participant in the first Domestic Violence Fatality Review team in North Carolina, serving on panels in Mecklenburg County for several years that reviewed instances of death related to apparent domestic violence. Respondent also offered at the hearing of this matter a letter of support from Attorney George V. Laughrun, II of the firm Goodman, Carr, Laughrun, Levine & Greene, PLLC in Charlotte, North Carolina.

2. As an additional mitigating factor, Respondent agreed to enter into the Stipulation to bring closure to this matter and because of his concern for protecting the integrity of the court system. Respondent also understands the negative impact his actions have had on the integrity and impartiality of the judiciary. Respondent was cooperative with the Commission's investigation, voluntarily providing information about the incident and fully and openly admitting error and remorse.

3. Nevertheless, the misconduct set out in this Recommendation is aggravated by the fact that Respondent received a private letter of caution from the Commission on March 11, 2013 after Respondent unreasonably delayed entering an adjudicative order in a different domestic action for thirteen (13) months. Respondent was warned that recurrence of such conduct may result in further proceedings before the Commission. Respondent received this letter of caution while the *Ives* matter (the subject of this proceeding) was under advisement. Notwithstanding the Commission's warning about unreasonable delay, Respondent engaged in the egregious delay in the present case.

4. The Commission also finds that Respondent fails to appreciate the magnitude of the harm caused by his misconduct. At the hearing of this matter, and notwithstanding his agreement to accept a stated disposition of suspension without pay for 30 days, Respondent through Counsel asserted to the Commission that a lesser sanction would be more appropriate. The Commission rejects that assertion, and but for the Stipulation and Agreement for Stated Disposition, which obviated the need for a lengthy and expensive contested

hearing, would have recommended a higher sanction to the Supreme Court.

5.  The Commission and Respondent acknowledge the ultimate jurisdiction for the discipline of judges is vested in the North Carolina Supreme Court pursuant to Chapter 7A, Article 30 of the North Carolina General Statutes, which may either accept, reject, or modify any disciplinary recommendation from the Commission.

6.  Pursuant to N.C. Gen. Stat. § 7A-377(a5), which requires that at least five members of the Commission concur in a recommendation of public discipline to the Supreme Court, all seven Commission members present at the hearing of this matter concur in this recommendation to **suspend Respondent without pay for a period of 30 days.**

(emphasis in original) (citations to pages of the Stipulation omitted)

In resolving this matter, we observe that "[t]he Supreme Court 'acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court' when reviewing a recommendation from the Commission." *In re Hartsfield*, 365 N.C. 418, 428, 722 S.E.2d 496, 503 (2012) (order) (quoting *In re Badgett*, 362 N.C. 202, 207, 657 S.E.2d 346, 349 (2008) (order)). Neither the Commission's findings of fact nor its conclusions of law are binding on this Court, but may be adopted by the Court if they are supported by clear and convincing evidence. *Id.* If the Commission's findings are adequately supported by clear and convincing evidence, the Court must determine whether those findings support the Commission's conclusions of law. *Id.* at 429, 722 S.E.2d at 503.

The Commission found the stipulated facts to be supported by "clear, cogent and convincing evidence." Respondent executed the Stipulation and agreed that

those facts and information would serve as the evidentiary and factual basis for the Commission's recommendation. Respondent does not contest any of the findings or conclusions made by the Commission. After careful review, we agree that the Commission's findings are supported by clear, cogent, and convincing evidence, and we now adopt them as our own. Furthermore, we agree with the Commission's conclusions that Respondent's conduct violates Canons 1, 2A, 3A(5) and 3B(1) of the North Carolina Code of Judicial Conduct, and is prejudicial to the administration of justice, thus bringing the judicial office into disrepute in violation of N.C.G.S. § 7A-376.

This Court is free to exercise its own judgment in arriving at a disciplinary decision in light of Respondent's violations of several canons of the North Carolina Code of Judicial Conduct and is not bound by the recommendations of the Commission. *Id.* Accordingly, "[w]e may adopt the Commission's recommendation, or we may impose a lesser or more severe sanction." *Id.* The Commission recommended that Respondent be suspended without compensation from the performance of his judicial duties for a period of thirty days. Respondent does not contest the Commission's findings of fact or conclusions of law and voluntarily entered into the Stipulation with the understanding that the Commission's recommendation would be suspension from his judicial duties for a period of thirty days without compensation.

We are mindful of Respondent's high regard in the legal community and of his

volunteer activities within the judicial system. We also appreciate Respondent's cooperation with the Commission's investigation, including his voluntary provision of information when requested, his admission of error and expression of remorse, and his willingness to enter into the Stipulation to bring this matter to a close. Respondent has demonstrated an understanding of the negative effect of his actions on the integrity and impartiality of the judiciary. Nevertheless, the misconduct set out in the facts of this case is aggravated by the finding that Respondent received a private letter of caution from the Commission on 11 March 2013, while he had the *Ives* matter under advisement, after he had unreasonably delayed entering an order in a different domestic action for thirteen months. He was warned at that time that recurrence of such conduct could result in further proceedings before the Commission. Notwithstanding his receipt of the Commission's warning about unreasonable delay, he engaged in the egregious delay in the present case. Weighing the severity of his conduct against his candor and cooperation, we conclude that the Commission's recommended thirty-day suspension without compensation is appropriate. At the conclusion of his suspension, Respondent may resume the duties of his office.

Therefore, the Supreme Court of North Carolina orders that Respondent Ronald L. Chapman be, and is hereby, SUSPENDED WITHOUT COMPENSATION from office as a Judge of the General Court of Justice, District Court Division Twenty-six, for THIRTY days from the entry of this order for conduct in violation of Canons 1, 2A, 3A(5), and 3B(1) of the North Carolina Code of Judicial Conduct, and for

conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376.

By order of the Court in Conference, this the 26th day of October, 2018.

<u>s/Morgan, J.</u>
 For the Court


WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 26th day of October, 2018.


AMY L. FUNDERBURK
Clerk of the Supreme Court


<u>s/M.C. Hackney</u>
Assistant Clerk