IN THE SUPREME COURT OF NORTH CAROLINA

No. 65A20

Filed 18 December 2020

IN RE INQUIRY CONCERNING A JUDGE, NO. 18-193

EDWIN D. CLONTZ, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered on 23 January 2020 that respondent Edwin D. Clontz, a Judge of the General Court of Justice, District Court Division, Judicial District Twenty-Eight, be publicly reprimanded for conduct in violation of Canons 2A and 3A(4) of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. Heard in the Supreme Court on 12 October 2020.

> *Robinson, Bradshaw & Hinson P.A., by Mark A. Hiller, John R. Wester and Matthew W. Sawchak, Counsel for the Judicial Standards Commission.*
>
> *Devereux & Banzhoff PLLC, by Andrew B. Banzhoff for respondent.*

ORDER

The issue before this Court is whether Judge Edwin D. Clontz, respondent, should be publicly reprimanded, as recommended by the North Carolina Judicial Standards Commission, for violations of Canons 2A and 3A(4) of the North Carolina Code of Judicial Conduct amounting to conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-

376(b). For the reasons stated below, we agree with and adopt the recommendations from the Commission.

On 4 February 2019 the Commission filed a Statement of Charges against respondent alleging respondent violated Canons 1, 2A, 3A(3), and 3A(4) when he held a probable-cause hearing without a defendant's court-appointed counsel present on or about 18 July 2018. Respondent waived personal service and filed an answer to the Factual Allegations in the Statement of Charges on 28 February 2019. Respondent's hearing before the Commission was originally scheduled for 11 October 2019 but was continued until 13 December 2019. Prior to this hearing, counsel for the Commission and respondent filed a Stipulation of Facts on 19 November 2019.

On 13 December 2019 a disciplinary hearing was held before the Commission Chair Judge Wanda G. Bryant and Commission members Judge Jeffrey B. Foster, Judge Sherri Elliot, Mr. William H. Jones Jr., Ms. Allison Mullins, Mr. Cresswell D. Elmore, and Mr. Grady H. Hawkins. Based on the Stipulation of Facts and its exhibits, the Commission found the following facts by clear, cogent and convincing evidence:

1. On or about July 18, 2018, Respondent was presiding over probable cause hearings in criminal district court when Assistant District Attorney (ADA) Kristin Terwey, representing the State, made a motion to continue *State v. Jermaine Logan,* Buncombe County File Nos. 18CR86478–84.

2. In response to ADA Terwey's motion to continue, Mr. Logan's court-appointed attorney Roger Smith objected

to the State's motion and demanded a probable cause hearing on behalf of his client. Respondent then held the matter open for the parties to confer and instructed them both to return to court at 2:00 pm.

3. Respondent did not realize that Mr. Smith was court-appointed, but was obviously aware that Mr. Logan was represented by counsel in his felony criminal matter.

4. At or about 2:00 pm, Respondent resumed court. ADA Terwey was present for the State and had secured the necessary witnesses to proceed with Mr. Logan's probable cause hearing. Mr. Logan, who had remained in custody since his arrest, was brought from the jail to a holding cell adjacent to the courtroom with a barred window looking into Respondent's courtroom as indicated in the photographs attached as Exhibits 1 and 2 to the Stipulation of Facts.

5. Mr. Smith failed to return to the courtroom at 2:00 pm as Respondent had instructed. Respondent knew Mr. Smith from other criminal cases and had previously experienced situations when Mr. Smith was not present in a timely manner for court appearances. Respondent then directed the courtroom bailiff to communicate with the other courtrooms in an effort to determine if Mr. Smith was elsewhere in the courthouse. The bailiff could not locate Mr. Smith in any other courtroom.

6. At or around 2:50 pm, Respondent had concluded the day's calendar with the exception of Mr. Logan's case and one other matter and Mr. Smith still had not returned to the courtroom.

7. Without Mr. Smith present, and knowing that Mr. Logan was represented by counsel in the felony criminal matter before him, Respondent then instructed ADA Terwey to call Mr. Logan's case for hearing. Specifically, at the start of the probable cause hearing, Respondent stated on the record as follows: "Defense attorney has asked for a probable cause hearing. He was told to be

here at 2 p.m. It is now 2:50 p.m., and the attorney is not present. State is prepared to proceed on probable cause. They will call their first witness."

8. Upon receiving Respondent's instruction to proceed without Mr. Logan's counsel present, ADA Terwey hesitated but then called her first witness as directed by Respondent.

9. During the probable cause hearing, Mr. Logan remained in the holding cell adjacent to the courtroom. Mr. Logan cross-examined the State's two witnesses through the barred window of the prisoner holding area while he remained handcuffed and without access to pen or paper. It is routine in Buncombe County for in custody defendants to remain in the prisoner holding cell during court proceedings unless a specific request is made by a party to bring the defendant into the courtroom and no such request was made in this case.

10. After the State concluded its evidence, ADA Terwey approached the bench to express to Respondent her discomfort with the hearing and her concern that Mr. Logan, if he testified without his attorney present, may incriminate himself. In response to ADA Terwey's concerns, Respondent then advised Mr. Logan that he would not be permitted to testify because he may incriminate himself. Specifically, Respondent informed Mr. Logan that he would not be allowed to speak to avoid accidentally incriminating himself and stated to Mr. Logan as follows: "I'm not going to allow you to make any statements, because this is a probable cause hearing. The State has presented their case. The standard of proof is so low – or it's lower than what would be beyond a reasonable doubt. I will let them make their argument."

11. Following Respondent's instructions to the State to make its argument, ADA Terwey proffered no closing argument and stated "I would simply ask that probable cause be found." Without giving Mr. Logan any

opportunity to be heard or make any arguments in his behalf, Respondent immediately ruled in the State's favor and announced his finding that there was sufficient evidence to establish probable cause for each of Mr. Logan's charges and bound Mr. Logan's matters over to superior court.

12. Shortly after Mr. Logan's probable cause hearing concluded, Mr. Smith returned to Respondent's courtroom to find that his client's case had been adjudicated in his absence. Mr. Smith, along with ADA Terwey and two other ADAs who were present during the probable cause hearing then went into a meeting with Respondent in his chambers.

13. While in Respondent's chambers, Mr. Smith explained that he was in the District Attorney's office discussing Mr. Logan's case. Just as he had made a point to put on the record at the start of the probable cause hearing that Mr. Smith was told to be in court at 2:00 pm and was not present by 2:50 p.m., Respondent again indicated to the parties that he proceeded with Mr. Logan's case without Mr. Smith to "make a point" because Mr. Smith was not present at 2:00 pm when he had been told to return to court and Mr. Smith did not otherwise communicate his location to the Court or courtroom personnel.

14. Respondent also acknowledged in the chambers meeting that he would not have proceeded with Mr. Logan's case had he known that the Superior Court ADA prosecuting Mr. Logan's case communicated that no plea bargain would be offered if Mr. Logan insisted on a probable cause hearing that day.

15. Respondent also told Mr. Smith that because his findings had already been entered by the clerk, Mr. Smith could appeal the finding of probable cause.

16. At the conclusion of the meeting in Respondent's chambers, Mr. Smith requested to be heard on Mr.

Logan's bond. Respondent informed the parties that he would entertain such a motion. After the parties reentered the courtroom, Mr. Smith advocated for a lower bond, which was opposed by the State. Respondent then lowered Mr. Logan's bond from $100,000 secured to $25,000 secured.

(citations to pages of the Stipulation and Record omitted). Based on these findings of fact, the Commission concluded as a matter of law that:

1. The Statement of Charges alleges Respondent violated Canon 1, Canon 2A, Canon 3A(3), and Canon 3A(4) of the Code of Judicial Conduct. The Commission concludes that the findings of fact support the conclusion that Respondent violated Canon 2A and Canon 3A(4).

2. Canon 2A of the Code of Judicial Conduct provides that "[a] judge should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Based on the findings of fact, the Commission concludes that on July 18, 2018, Respondent failed to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary in violation of Canon 2A of the North Carolina Code of Judicial Conduct.

3. Specifically with respect to Canon 2A, the Commission's findings of fact concerning Respondent's conduct show that Respondent knowingly proceeded with defendant's probable cause hearing without the defendant's counsel present to "make a point" about the lawyer's failure to appear in court at the time Respondent had directed. Respondent noted this point on the record at the outset of the hearing and reiterated it in the chambers conference thereafter. At the hearing itself, Respondent made no effort to ascertain if Mr. Logan wished to continue the hearing or waive his right to counsel and proceed. Respondent's conduct not only forced Mr.

Logan to proceed without his court-appointed counsel, but also required Mr. Logan to cross-examine witnesses from behind bars while handcuffed without access to pen and paper. Respondent's conduct also threatened Mr. Logan's 5th Amendment right against self-incrimination, a point that ADA Terwey had to raise to Respondent. Finally, Respondent's conduct sent a clear message that a criminal defendant will be held accountable for the tardiness of his court-appointed lawyer. This is a point that Respondent himself stated was not directed just at Mr. Smith, but at the entire Buncombe County Bar. Such conduct undoubtedly undermines public confidence in the fairness of criminal proceedings in violation of Canon 2A.

4. The Commission further finds that Canon 2A is violated, and conduct prejudicial to the administration of justice occurs, when a judge employs improper means to discipline an attorney for conduct the judge considered to be unprofessional or frustrating. *See, e.g., In re Bullock,* 328 N.C. 712, 717–718, 403 S.E.2d 264, 267 (1991) (censuring Respondent for violation of Canon 2A and conduct prejudicial to the administration of justice upon a finding that Respondent improperly ordered an attorney into custody and further demanded information subject to the attorney-client privilege); *In re Scarlett,* Inquiry No. 10-209, Judicial Standards Commission, June 15, 2011)[sic] (publicly reprimanding Respondent for violation of Canon 2A among other violations and conduct prejudicial to the administration of justice for holding a disciplinary hearing against an attorney for unprofessional conduct without basic due process afforded to the attorney and dictating that the proceeding be closed to the public).

5. Canon 3A(4) requires a judge to "accord every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law . . . ." Based on the findings of fact, the Commission further concludes that Respondent failed to afford Mr. Logan and Mr. Smith a full right to be heard according to the

law in violation of Canon 3A(4) of the North Carolina Code of Judicial Conduct.

6. Specifically with respect to Canon 3A(4), the Commission's findings of fact concerning Respondent's conduct on July 18, 2018, and as supported by the transcript and audio proceeding with the hearing, show that Respondent stated at the outset of the hearing that he was proceeding with the hearing regardless of Mr. Smith's absence and directed the State to proceed. Respondent did so without giving Mr. Logan any opportunity to be heard regarding the absence of his court-appointed counsel, whether he wished to continue the matter, or whether he wished to waive his right to counsel and proceed. In addition to denying Mr. Logan the opportunity to be heard on these critical issues, Respondent also interfered with the attorney-client relationship by denying Mr. Logan the right to consult with his court-appointed attorney and have representation at the hearing. Moreover, Respondent also intentionally denied Mr. Logan the right to be heard following the close of the State's evidence, at which time Respondent directly and unequivocally informed Mr. Logan that he would not have the opportunity to be heard: "I'm not going to allow you to make any statements, because this is a probable cause hearing. The State has presented their case. The standard of proof is so low—or it's lower than what would be beyond a reasonable doubt. I will let them make their argument." Although Respondent's denial of Mr. Logan's right to be heard was rooted in the concerns ADA Terwey rightfully raised to Respondent about whether Mr. Logan if allowed to testify could incriminate himself in violation of his 5th Amendment rights, this was a situation caused by Respondent's conduct in forcing Mr. Logan to proceed without his court-appointed counsel. Based on the totality of these circumstances, Respondent's conduct denied Mr. Logan a full right to be heard as required under Canon 3A(4). *See also* Charles Gardner Geyh *et al.,* Judicial Conduct and Ethics § 2.05 at 2-33 (5th Edition 2013) ("A judge

violates the duty under the Code to accord litigants their full right to be heard when the judge interferes with the litigant's relationship with counsel. The most overt interference with the attorney-client relationship occurs if court proceedings are conducted with counsel absent when the judge knows the party has representation.")

7. Although the Statement of Charges alleges that Respondent's conduct constituted willful misconduct in office in violation of N.C. Gen. Stat. § 7A- 376(b), the Commission concludes that the clear and convincing evidence does not support a conclusion of willful misconduct in office. The Commission does conclude, however, that Respondent engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C. Gen. Stat. § 7A- 376(b). *See also* Code of Judicial Conduct, Preamble ("[a] violation of this Code of Judicial Conduct may be deemed conduct prejudicial to the administration of justice that brings the judicial office into disrepute.")

8. The Supreme Court first defined conduct prejudicial to the administration of justice in *In re Edens,* 290 N.C. 299, 226 S.E.2d 5 (1976) as "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to the public esteem for the judicial office." *Id.* at 305, 226 S.E.2d at 9. Unlike willful misconduct in office, therefore, the motives or potential bad faith of the judge are not in issue. Instead, as the Supreme Court explained in *Edens,* conduct prejudicial to the administration "depends not so much upon the judge's motives, but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers." *Id.* at 305–306 (internal citations and quotations omitted).

9. Based upon the Commission's conclusions that Respondent's conduct violated Canon 2A and Canon

3A(4) as set forth in Paragraphs 2 through 6 above, the Commission further concludes that Respondent's conduct was prejudicial to the administration of justice and brings the judicial office into disrepute.

10. As noted above, the subjective motives or good faith of the Respondent are not the focus of an inquiry into whether his conduct was prejudicial to the administration of justice. The focus is on the impact Respondent's conduct might have on objective observers. *Eden,* 290 N.C. at 305, 226 S.E.2d at 9. Nevertheless, the Commission does address the assertions of Respondent's Counsel at the hearing of this matter that Respondent's conduct was the result of a good faith legal error and thus he cannot be subject to discipline. Respondent's Counsel asserted that Respondent forced Mr. Logan to proceed without his counsel at the probable cause hearing because he felt he was obligated to do so after consulting the statutes, specifically N.C.G.S. § 15A-606(e) & (f), which govern probable cause hearings, and § 15A-611(c), which governs the procedures in probable cause hearings if a defendant appears without counsel.

a. As a factual matter, Respondent's defense of good faith legal error is not supported in the record. The Stipulation of Facts entered into by Respondent specifically addresses the agreed facts as to Respondent's motives and statements regarding his decision to proceed without Mr. Logan's court-appointed counsel present. It is undisputed that he did so to "make a point" to Mr. Smith and other lawyers about being on time to court. Nowhere in the Stipulation of Facts is there any reference to Respondent's alleged belief that he was required under N.C.G.S. § 15A-606(e) to proceed with a probable cause hearing involving a represented criminal defendant without counsel present. The audio and transcript of the probable cause hearing further establish that Respondent at no time indicated to the parties that he was proceeding with the hearing as he allegedly

believed was required under § 15A-606(e). Instead, as the audio and transcripts make clear, he informed the parties he was proceeding because defense counsel asked for the hearing and then had failed to appear on time. For these reasons, there is no factual support in the record that Respondent proceeded with the hearing for any other reason than to "make a point" about attorney tardiness to court.

b. As a procedural matter, the Commission further finds that any alleged good faith legal error in interpreting § 606(e) does not preclude a finding that Respondent violated Canon 2A or 3A(4) or that his objective conduct and statements were prejudicial to the administration of justice and public esteem for the judicial office. Specifically, the Commission does not need to consider or decide whether Respondent's interpretation of § 606(e) was correct as a matter of law to determine that Respondent denied Mr. Logan an opportunity to be heard at the probable cause hearing or engaged in conduct that undermines public confidence in the impartiality and integrity of the judiciary as established in Paragraphs 2 through 6 above.

11. In reaching these conclusions of law, the Commission also recognizes that judges have a duty under Canon 3B(3) of the Code of Judicial Conduct to take disciplinary action against attorneys for unprofessional conduct, and further, that there is a possibility that disciplinary action may have been warranted in the case of Mr. Smith's apparent chronic tardiness to court and failure to appear at 2:00 p.m. as Respondent directed. This is without question a problem that vexes many good judges across the state. But there are many tools available to judges to discipline attorneys for failure to appear on time. That being said, forcing a criminal defendant known to be represented by counsel to proceed to represent himself in a probable cause hearing to which he was entitled and requiring him to cross-examine witnesses while handcuffed and confined in a small holding cell is not a disciplinary measure

against the defendant's attorney that comports with the Code of Judicial Conduct or promotes public confidence in the administration of justice.

12. Finally, the Commission recognizes that it is not empowered to determine matters of law and does not pass upon the legal question of whether Respondent's findings of probable cause was supported in fact or law. That matter, as Respondent acknowledged and informed Mr. Smith, was an appealable issue to be addressed by the appellate courts. As noted above, the Commission also does not decide the appropriate interpretation on N.C.G.S. § 611(c) or § 606(e) or their application to the facts of this matter. The Commission instead must evaluate Respondent's conduct at the probable cause hearing and "the impact such conduct might reasonably have upon knowledgeable observers." *Edens,* 290 N.C. at 305–306, 226 S.E.2d at 9. Based on the findings of fact and for all the foregoing reasons, the Commission concludes as a matter of law that Respondent's conduct not only violated Canon 2A and Canon 3A(4) of the Code of Judicial Conduct, but was conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

(citations to pages of the Stipulation and Record omitted). Based on these findings of fact and conclusions of law, the Commission recommended that this Court publicly reprimand respondent. In support of this recommendation, the Commission offered the following information:

1. The Supreme Court in *In re Crutchfield,* 289 N.C. 597, 223 S.E.2d 822 (1975) first addressed sanctions under the Judicial Standards Act and stated that the purpose of judicial discipline proceedings "is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges." *Id.* at 602, 223 S.E.2d at 825.

2. Under the statutes governing the Commission, a public reprimand is appropriate where "a judge has violated the Code of Judicial Conduct and has engaged in conduct prejudicial to the administration of justice, but that misconduct is minor." N.C.G.S. § 7A-374.2(7). The Commission considers Respondent's misconduct to be "minor" because of the lack of prejudice to Mr. Logan in his criminal proceeding given the low bar for the State to establish probable cause and his ability to appeal the probable cause determination. The Commission also considers Respondent's conduct in reducing Mr. Logan's bond following the finding of probable cause and the isolated nature of the incident.

3. Finally, in recommending reprimand as opposed to a more severe sanction, the Commission considers as mitigating factors Respondent's willingness to enter into the Stipulation of Facts and the character affidavits submitted by Respondent that attest to Respondent's professionalism, reputation for impartiality in criminal cases, and courteous demeanor as a jurist.

(citations to pages of the Stipulation and Record omitted).

In proceedings brought pursuant to N.C.G.S. § 7A-376, this Court acts as a court of original jurisdiction rather than an appellate court. *In re Hill,* 357 N.C. 559, 564 (2003) (citing *In re Peoples,* 296 N.C. 109, 147 (1978)). The Commission's recommendations are not binding on this Court, and this Court makes its own independent judgment when considering the evidence. *In re Nowell,* 293 N.C. 235, 244 (1977). This Court may "adopt the Commission's findings of fact if they are supported by clear and convincing evidence, or [we] may make [our] own findings." *In re Hartsfield,* 365 N.C. 418, 428 (2012) (quoting *In re Badgett,* 362 N.C. 202, 206

(2008)). If this Court finds that the Commission's findings of fact are supported by clear and convincing evidence and chooses to adopt them, we must determine whether those findings support the Commission's conclusions of law. *In re Stone,* 373 N.C. 368, 379 (2020) (citing *In re Hartsfield,* 365 N.C. at 429)

The Commission based its findings of fact on the stipulated facts and exhibits, and respondent does not contest these findings. After careful review, we agree that the Commission's findings of fact are supported by clear, cogent, and convincing evidence, and we adopt them as our own.

Respondent does not contest the fact that he held a probable-cause hearing without defendant's counsel present but instead argues that an objectively reasonable reading of our statutes allows a district court to conduct a probable-cause hearing without a defendant's counsel present. As an initial matter, this Court need not find a violation of our statutes in order to find a violation of our Code of Judicial Conduct. *See In re Tucker,* 350 N.C. 649, 651 (1999) (finding that respondent violated our Code of Judicial Conduct by rejecting a guilty plea and entering a verdict of not guilty without determining whether the judge's conduct also violated our General Statutes). Instead, this Court must determine whether respondent's statements, actions, and inactions constitute "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." N.C.G.S. § 7A-376(b) (2019).

Although our analysis hinges on respondent's conduct rather than his compliance with our General Statutes, we reject respondent's argument that his

conduct was the result of an objectively reasonable interpretation of our statutes governing probable-cause proceedings. Respondent argues that N.C.G.S. § 15A-606(e) allows probable-cause hearings to proceed without defense counsel present and N.C.G.S. § 15A-606(f) barred him from continuing the matter. A thorough examination of these statutes shows why this argument fails. These two sub-sections provide that:

> (e) If an unrepresented defendant is not indigent and has indicated his desire to be represented by counsel, the district court judge must inform him that he has a choice of appearing without counsel at the probable-cause hearing or of securing the attendance of counsel to represent him at the hearing. The judge must further inform him that the judge presiding at the hearing will not continue the hearing because of the absence of counsel except for extraordinary cause.
>
> (f) Upon a showing of good cause, a scheduled probable-cause hearing may be continued by the district court upon timely motion of the defendant or the State. Except for extraordinary cause, a motion is not timely unless made at least 48 hours prior to the time set for the probable-cause hearing.

N.C.G.S. § 15A-606(e)–(f) (2019). Although § 15A-606(e) allows for a probable-cause hearing to proceed without counsel present, it only applies to defendants who are not indigent, and it also requires that the trial court inform the defendant that they have a choice of appearing without counsel or securing the attendance of counsel and that the hearing will not be continued due to counsel's absence except for extraordinary cause. Respondent's conduct does not objectively comply with this statute because

there is no evidence that he ascertained whether defendant was indigent, as a threshold matter, and there is no evidence that he informed defendant of his choice between appearing without counsel or securing the attendance of counsel.

Sub-section 15A-606(f) does not justify respondent's conduct either because it explicitly only applies to motions made by the defendant or the State, not the trial court. Respondent's admission that he would not have conducted the hearing if he had known that the ADA threatened to withhold a plea offer if defendant challenged probable cause further negates his original argument that § 15A-606(f) barred him from continuing the matter.

Additionally, if respondent attempted to objectively follow all relevant statutes he would have followed N.C.G.S. § 15A-611, which is titled "Probable-cause hearings." Subsection (c) provides that:

> If a defendant appears at a probable-cause hearing without counsel, the judge must determine whether counsel has been waived. If he determines that counsel has been waived, he may proceed without counsel. If he determines that counsel has not been waived, except in a situation covered by G.S. 15A-606(e) he must take appropriate action to secure the defendant's right to counsel.

N.C.G.S. § 15A-611(c). The plain language of this subsection requires the trial court to inquire whether a defendant has waived counsel if they appear without counsel and further requires "appropriate action" if counsel has not been waived and the defendant is indigent. There is no evidence that the trial court ascertained whether defendant waived counsel, and respondent failed to take any "appropriate action to

secure the defendant's right to counsel." *Id.* Therefore, respondent's conduct failed to reflect an objectively reasonable reading and interpretation of our General Statutes governing probable-cause proceedings.

Respondent further argues that subjecting him to punishment for a legal error would create a slippery slope and "extend the disciplinary provisions in the Code of Judicial Conduct to cover legal errors committed by trial judges[.]" He cites to our recent decision in *State v. Simpkins,* 373 N.C. 530 (2020), in which we held that the trial court erred by determining the defendant had waived his right to counsel and remanded the matter for a new trial. *Id.* at 541. This analogy is inapposite. Unlike respondent here, the trial court in *Simpkins* made multiple attempts to determine whether the defendant wished to waive counsel and appointed standby counsel. *Id.* at 532. These additional actions by the trial court in *Simpkins* would foster public faith and confidence in the judiciary, even though the trial court was ultimately wrong in its determination that defendant waived counsel. Unlike the trial court in *Simpkins,* respondent rushed to hold a hearing without counsel present, he failed to explore other options regarding counsel prior to commencing the proceeding, and he made comments about "making a point" after the proceeding. This conduct demonstrated a disregard for the defendant's statutory and constitutional rights, and that disregard undermines public faith and confidence in the judiciary.

For the reasons articulated above, we agree with and adopt as our own the Commission's conclusions that respondent's conduct violates Canons 2A and 3A(4) of

the North Carolina Code of Judicial Conduct and is prejudicial to the administration of justice, thus bringing the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b).

The Commission recommended that respondent be publicly reprimanded. This Court is not bound by the recommended sanction of the Commission. *Hartsfield,* 365 N.C. at 429. "[W]e may exercise our own judgment in arriving at a disciplinary decision in light of respondent's violations of the North Carolina Code of Judicial Conduct." *In re Stone,* 373 N.C. 368, 379 (2020) (citing *Hartsfield,* 365 N.C. at 429). Therefore, "[w]e may adopt the Commission's recommendation, or we may impose a lesser or more severe sanction." *Id.* This Court does not have established guidelines for determining the appropriate sanction and "each case should be decided upon its own facts." *In re Martin,* 295 N.C. 291, 305 (1978).

We recognize the multiple affidavits submitted on respondent's behalf from attorneys in the Buncombe County Bar that attest to his fairness and further recognize that respondent has never been the subject of discipline from this Court. In light of this mitigating evidence and the fact that respondent voluntarily entered into a Stipulation of Facts, we conclude that the Commission's additional findings and recommendation of public reprimand are appropriate, and we adopt them as our own.

Therefore, the Supreme Court of North Carolina orders that respondent Edwin D. Clontz be publicly reprimanded for conduct in violation of Canon 2A and Canon 3A(4) of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to

the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376.

By order of the Court in Conference, this the 15th day of December, 2020.


s/Davis, J.
For the Court

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 15th day of December, 2020.

AMY L. FUNDERBURK
Clerk of the Supreme Court

s/M.C. Hackney
Assistant Clerk

Justice EARLS dissenting from Order.

A public reprimand is appropriate where the Supreme Court finds that "a judge has violated the Code of Judicial Conduct and has engaged in conduct prejudicial to the administration of justice, but that misconduct is minor." N.C.G.S. § 7A-374.2(7) (2019). Because it is not clear to me that respondent's conduct, while misguided, was so egregious as to be prejudicial to the administration of justice, I would have remanded to the Judicial Standards Commission for the issuance of a private letter of caution rather than issue a public reprimand from this Court. As a result, I respectfully dissent from the majority's Order in this matter.

This Judicial Standards Commission case proceeded on stipulated facts, and the Commission entered findings of fact based on the record before it. Respondent was presiding over probable cause hearings in criminal district court when the case of defendant Jermaine Logan was called. The assistant district attorney, Ms. Terwey, requested a continuance. Defense counsel, Mr. Smith, objected and demanded a probable cause hearing. The respondent held the matter open and instructed the parties to return at two o'clock that afternoon.

At two o'clock, ADA Terwey was present with the necessary witnesses and the defendant, Mr. Logan, had been brought from jail to a holding cell adjacent to the courtroom that had a barred window looking into the room. However, defense counsel, Mr. Smith, was not there.

After dealing with other matters on the calendar and having the bailiff check the other courtrooms to try to find Mr. Smith, respondent proceeded with the probable cause hearing without defense counsel present. Mr. Logan was allowed to cross-examine the State's witnesses "through the barred window of the prisoner holding area while he remained handcuffed and without access to pen or paper, which is routine in Buncombe County for in custody defendants, unless a specific request is made by a party to bring the defendant into the courtroom."

At the conclusion of the State's evidence, ADA Terwey indicated that she was uncomfortable with the proceedings. She stated that Mr. Logan might incriminate himself if he testified. Respondent advised Mr. Logan that he wouldn't be allowed to testify. ADA Terwey did not give a closing argument and respondent found that there was probable cause for the charges.

After the hearing concluded, Mr. Smith returned and the parties met in respondent's chambers. Mr. Smith reported that he had been in the district attorney's office discussing Mr. Logan's case, where a Superior Court assistant district attorney threatened to withhold a plea deal if Mr. Smith pressed for a probable cause hearing. Respondent stated that if he had known about the threat he would not have proceeded with the hearing. He stated at this point "that he proceeded with Mr. Logan's case without Mr. Smith to 'make a point' because Mr. Smith was not present at 2:00 pm when he had been told to return to court and Mr. Smith did not otherwise communicate his location to the Court or courtroom personnel." In a bond hearing

after the meeting in chambers, respondent lowered Mr. Logan's bond from $100,000 secured to $25,000 secured.

Respondent entered into evidence character affidavits from four witnesses who attest that he is generally well-regarded in the community, generally sensitive to the interests of defendants who appear before him, and that his conduct on this occasion was not part of a pattern of repeated misbehavior.

As the majority notes, respondent argues without merit that in these circumstances he was legally prohibited by statute from continuing the probable cause hearing and was permitted to proceed in the absence of defense counsel. However, this legal mistake, even combined with respondent's admitted improper motive, does not rise to the level of conduct which has warranted public reprimand in other cases. In the last five years, this Court has issued four public reprimands, the sum of which suggest that the instant case is inappropriate for public reprimand.

For example, in another case adjudicated on stipulated facts, a district judge, perceiving unfair treatment from her Chief District Court Judge, began complaining about the Chief Judge "to other judges in her district, retired judges, court staff, and local attorneys" and "also suggested to her case manager and a courtroom clerk that the Chief Judge's decisions regarding her schedule were based in part on racial prejudice." *In re Smith*, 372 N.C. 123, 126, 827 S.E.2d 516, 518 (2019). In addition to consistent complaints about the Chief Judge, which we concluded on the evidence were unwarranted, *id.* at 127, 827 S.E.2d at 518–19, the respondent in that case

sometimes openly "announce[d] that she was adjourning court early for personal appointments, such as for hair and nail salon visits or to spend time with her child," which "created a perception that her judicial duties did not take precedence over her personal commitments and work schedule preferences." *Id.* at 127–28, 827 S.E.2d at 519. As a result of the respondent's conduct, "several members of the domestic bar" requested that the respondent be removed from their cases, and "several judicial and court colleagues" brought concerns to the Chief Judge about the respondent's behavior. *Id.* at 128, 827 S.E.2d at 519. We concluded that a public reprimand was appropriate. *Id.* at 135, 827 S.E.2d at 523.

Similarly, we considered the case of a trial judge who "(1) failed to issue a ruling for more than two (2) years on a motion for attorney's fees and expenses . . .; (2) failed to respond or delayed responding to party and attorney inquiries as to the status of the pending ruling; and (3) failed to respond in a timely manner to numerous communications from the Commission's investigator regarding the status of the ruling during the Commission's investigation into this matter." *In re Henderson*, 371 N.C. 45, 46, 812 S.E.2d 826, 827 (2018). The respondent in that case admitted "that he had no excuses for the delay other than his 'dread' of the case." *Id.* at 47, 812 S.E.2d at 828. We concluded that the respondent should be publicly reprimanded. *Id.* at 52, 812 S.E.2d at 830.

We also considered the case of a Deputy Commissioner of the North Carolina Industrial Commission, where it was charged that the respondent had "wrecked his

vehicle while driving under the influence of an impairing substance, putting at risk his own life and the lives of others." *In re Shipley*, 370 N.C. 595, 596, 811 S.E.2d 556, 557 (2018). The Judicial Standards Commission's factual findings, unchallenged by the respondent, stated that the respondent was involved in an accident with another vehicle at around nine o'clock in the evening, after which two breath alcohol tests produced results indicating that the respondent had been driving while impaired. *Id.* at 596–97, 811 S.E.2d at 557–58. We issued a public reprimand. *Id.* at 600, 811 S.E.2d at 560.

In another case, we considered a recommendation by the Commission concerning a district judge who was charged with failing to report extrajudicial income and "presiding over a criminal case that he had initiated and agreeing to the dismissal of the case after receiving restitution in chambers." *In re Mack*, 369 N.C. 236, 237, 794 S.E.2d 266, 267–68 (2016). The Commission's factual findings, unchallenged by the respondent, indicated that the respondent received rental income from two residential properties, but failed to report that income for a number of years. *Id.* at 238–42, 794 S.E.2d at 268–70. Moreover, the respondent presided over a criminal case, calendared in his courtroom by the Assistant District Attorney, in which he was the complainant against a former tenant who had damaged the respondent's rental home. *Id.* After acknowledging the judge's remedial efforts and strong dedication to the community, we determined that a public reprimand was appropriate. *Id.* at 247–49, 794 S.E.2d at 273–74.

In contrast to our prior cases issuing public reprimands, here respondent's conduct occurred in one proceeding over the course of one afternoon. In *Smith*, *Henderson*, and *Mack*, on the other hand, the respondent's conduct persisted over a significant period of time. *See In re Smith*, 372 N.C. at 126–28, 827 S.E.2d at 518–19; *In re Henderson*, 371 N.C. at 46, 812 S.E.2d at 827; *In re Mack*, 369 N.C. at 238–42, 794 S.E.2d at 268–70. Respondent's conduct in the present case involved no allegation of criminal conduct. However, the respondent in *Shipley* was accused of driving while under the influence of an impairing substance in violation of N.C.G.S. § 20-138.1. *In re Shipley*, 370 N.C. at 596, 811 S.E.2d at 557. Here, respondent's conduct was not part of a pattern of unprofessional or unbecoming behavior. The respondent in *Smith*, however, received a public reprimand after "attorneys that frequently appeared" before her reported that she "regularly rushed to conclude cases" so that they were concerned about having a full and fair opportunity to be heard, and after several complaints were lodged regarding this and other behavior. *In re Smith*, 372 N.C. at 125–29, 827 S.E.2d at 517–20. Moreover, none of the other cases in which the Court has issued a public reprimand in the last five years included an arguable claim of legal authority for the respondent's conduct. Upon review of the similar cases considered recently by this Court, I am convinced that the present case does not demonstrate the level of conduct warranting a public reprimand.

It is well-established that "[t]he Supreme Court 'acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court' when reviewing

a recommendation from the Commission." *In re Smith*, 372 N.C. at 134, 827 S.E.2d at 522. In *Smith* we observed that:

> This Court is not bound by the recommendations of the Commission. Rather, we may exercise our own judgment in arriving at a disciplinary decision in light of Respondent's violations of several canons of the North Carolina Code of Judicial Conduct. Accordingly, '[w]e may adopt the Commission's recommendation, or we may impose a lesser or more severe sanction."

*In re Smith*, 372 N.C. at 135, 827 S.E.2d at 523 (citations omitted) (quoting *In re Hartsfield*, 365 N.C. 418, 429, 722 S.E.2d 496, 503 (2012)). Indeed, "[i]n arriving at a disciplinary decision, this Court employs its own judgment and 'is unfettered by the Commission's recommendations.' " *In re Hartsfield*, 365 N.C. at 429, 722 S.E.2d at 503 (quoting *In re Badgett,* 362 N.C. 202, 207, 657 S.E.2d 346, 349 (2008)).

In making that independent judgment, it is important to remember that a judicial standards inquiry "is merely an inquiry into the conduct of one exercising judicial power." *In re Nowell*, 293 N.C. 235, 241, 237 S.E.2d 246, 250 (1977). "Its aim is not to punish the individual but to maintain the honor and dignity of the judiciary and the proper administration of justice." *Id.* On the facts of this case, accurately described by the Court's order, a public reprimand is not required to ensure the honor of the judiciary and the proper administration of justice. Rather, a letter of caution is sufficient. Accordingly, I respectfully dissent from the Court's order of public reprimand.

EARLS, J. dissenting from order; Justices NEWBY and DAVIS join in this dissent.